**In re William J. STOECKER, Debtor.**

**Bankruptcy No. 89 B 02873.**

United States Bankruptcy Court,
N.D. Illinois, E.D.

Feb. 28, 1992.

Opinion on Motions for Alternative
Relief and for Limited Reconsideration
May 26, 1992.

120

Robert Radasevich, George M. Hoffman, James H. Bowhay, Neal Gerber & Eisenberg, Chicago, Ill., for trustee.

## MEMORANDUM OPINION

JOHN H. SQUIRES, Bankruptcy Judge.

This matter comes before the Court on the Trustee's objection to the allowance of certain proofs of claim filed by The Bank of Bellwood ("Bellwood") and Mid American National Bank and Trust Company ("Mid American"). For the reasons set forth herein, the Court having considered the pleadings filed, does hereby sustain in part the Trustee's objection to the secured claim of Bellwood. Bellwood's secured claim is disallowed for failure to support same as required by Federal Rule of Bankruptcy Procedure 3001(c) and (d). Bellwood's motion for judgment on the pleadings is denied and its demand for a jury trial stricken. Additionally, the Court hereby sustains the Trustee's objection to the secured claim of Mid American and denies Mid American's request for an equitable lien. The principal holding of the Court is that the statute of limitations prescribed in 11 U.S.C. § 546(a) does not apply to claims objections based on 11 U.S.C. § 502(d).

## I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334 and General Rule 2.33(a) of the United States District Court for the Northern District of Illinois. This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B) and (O).

## II. FACTS AND BACKGROUND

Many of the facts, background and some of the history of this case are contained in earlier Opinions of the Court. *See In re Stoecker*, 118 B.R. 596 (Bankr.N.D.Ill. 1990); *In re Stoecker*, 114 B.R. 965, 967–968 (Bankr.N.D.Ill.1990); *In re Stoecker*, 103 B.R. 182, 184–185 (Bankr.N.D.Ill.1989). On February 21, 1989, an involuntary Chapter 11 petition was filed against the Debtor. Thereafter, on March 8, 1989, after a full evidentiary hearing, the Court

John A. Relias, Jennifer Murphy, Vedder, Price Kaufman & Kammholz, Chicago, Ill., David A. Bryan, Wasserman, Bryan, Landry & Honold, Toledo, Ohio, for Mid American Nat. Bank and Trust Co.

Keevan D. Morgan, Morgan & Bley, Ltd., Chicago, Ill., for Bank of Bellwood.

Thomas E. Raleigh, Raleigh & Helms, Chicago, Ill., trustee.

ordered the appointment of a Chapter 11 trustee. Subsequently, on March 14, 1989, the Court entered an order for relief under Chapter 11. Thomas Raleigh (the "Trustee") was thereafter appointed by the United States Trustee on March 20, 1989. The case was subsequently converted on February 26, 1990. The Trustee continues to serve as trustee of the Chapter 7 estate pursuant to 11 U.S.C. § 701(a).

### A. *The Bank of Bellwood*

On January 30, 1987, the Debtor borrowed the sum of $750,000.00 from Bellwood. The loan was allegedly evidenced by a promissory note and interest was payable monthly. The loan came due on February 1, 1989. On December 20, 1988, the Debtor made a $6,562.50 payment to Bellwood for December interest. Thereafter, on January 18, 1989, the Debtor made an additional $9,541.66 payment for January interest. Bellwood obtained judgment by confession against the Debtor during the ninety days preceding the bankruptcy. Bellwood allegedly recorded its memoranda of judgment against some of the Debtor's real estate and placed writs of execution with the sheriff to seize the Debtor's personal property. Citations to discover assets were issued and levies were allegedly made to enforce the judgment.

On March 11, 1991, the Trustee filed an adversary proceeding against Bellwood alleging that the December and January interest payments were avoidable preferential transfers pursuant to 11 U.S.C. § 547(b). That suit did not proceed to trial and no order was entered avoiding any liens obtained by Bellwood incidental to its post-judgment enforcement actions against the Debtor. Subsequently, Bellwood and the Trustee entered into a settlement agreement (the "Settlement Agreement") which was approved by the Court on June 3, 1991. Pursuant to the terms of the Settlement Agreement, Bellwood's distribution from the Debtor's estate was reduced by the sum of $11,333.33. In addition, Bellwood generally released the Trustee and the estate from all claims, except those set forth in Bellwood's proof of claim. Moreover, Bellwood agreed not to amend or increase its claim against the estate based upon the $11,333.33 reduction. The relevant portion of the Settlement Agreement on which Bellwood relies provides as follows:

> 3. *Release of the Bank by Trustee.* The Trustee, his successors, agents, and assigns, does hereby release and forever discharge the Bank from any and all claims, demands, or causes of action of any kind whatsoever which he has, had or may have had against it, including without limitation of the generality of the foregoing, all claims, counterclaims, or cross-claims that have been or could have been asserted in the Adversary Proceeding.

The adversary proceeding was dismissed with prejudice pursuant to the terms of the Settlement Agreement on June 24, 1991.

On August 27, 1991, the Trustee filed objections to the filed proofs of claim of various creditors, including Bellwood. The Trustee listed Bellwood's claim as a "Remaining General Unsecured Claim In The Estate." The Trustee contends that Bellwood's claim, which was filed as a secured claim, should be treated as a general unsecured claim if the liens are released because Bellwood's security results from voidable preferential transfers under section 547, and hence, its claim must be disallowed under section 502(d).

On September 17, 1991, Bellwood filed an objection to the classification of its claim as a general unsecured claim. Bellwood argued that its claim should be classified and paid as a secured claim. Attached to Bellwood's objection was a copy of its proof of claim. The underlying documents, however, evidencing the loan to the Debtor, and the memoranda of judgment and executions perfecting judgment and execution liens were not provided. Subsequently, on October 8, 1991, the Trustee filed a reply to Bellwood's objection. Shortly thereafter, on October 10, 1991, Bellwood also filed a motion to strike the Trustee's objection and reply as being improper. On October 11, 1991, the Trustee filed a separate objection to Bellwood's claim which tracked the argu-

ments contained in the Trustee's original objection and reply.

On October 11, 1991, at a hearing on the Trustee's objections, the Court denied Bellwood's motion to strike and granted it twenty-eight days to file a response to the Trustee's objection. The Trustee was thereafter granted fourteen days to reply, and Bellwood was granted an additional fourteen days to file a final reply. In addition, the Court held that the Trustee need not file a separate adversary proceeding under Federal Rule of Bankruptcy Procedure 7001 because the Trustee's objection sought only to disallow Bellwood's secured claim and did not seek any affirmative relief against Bellwood. The Court held that the Trustee's objection could be litigated as a contested matter under Federal Rule of Bankruptcy Procedure 9014.

Thereafter, on November 6, 1991, Bellwood filed an "Answer to Trustee's Purported Section 502(d) Objection to Bellwood's Secured Claim." Bellwood made the following points: (1) it reiterated its objection to the procedural posture of the matter, asserting that the Trustee was seeking relief available only through an adversary proceeding commenced in accordance with Bankruptcy Rule 7001; (2) alleged that the Trustee's moving papers fail to state a claim upon which relief can be granted; (3) the relief requested by the Trustee is beyond the scope of a hearing on an objection to a claim and is beyond the scope of section 502(d) which the Trustee cannot employ "offensively"; (4) that the obligations of Bellwood to the Trustee were discharged pursuant to the Settlement Agreement; (5) the Trustee's objection is barred by the doctrine of res judicata; (6) the section 546(a) limitations period precludes the Trustee from commencing

any action under section 547 to avoid the alleged preferential transfers to Bellwood and recover same under section 550 (which section is referenced in section 502(d) and thus is time barred even as an objection to Bellwood's claim); and (7) all material facts should be tried by a jury.

Along therewith, Bellwood filed a motion for judgment on the pleadings accompanied with a memorandum in support thereof.[1] On November 22, 1991, the Trustee filed his response to Bellwood's motion for judgment on the pleadings. Thereafter, Bellwood filed its reply to the Trustee's response on December 6, 1991. A hearing was set on the matter on December 16, 1991. At that time, the Court afforded the parties an opportunity to introduce evidence into the record. The parties, however, waived evidentiary hearing and rested on the pleadings filed. In addition, the Court allowed the parties to supply additional memoranda regarding the applicability of the recent U.S. Supreme Court decision *In re ZZZZ Best Co.*, — U.S. —, 112 S.Ct. 527, 116 L.Ed.2d 514 (1991). In accordance with that ruling, Bellwood filed its memorandum of law on December 18, 1991. Shortly thereafter, on December 20, 1991, the Trustee then filed a surreply in further support of his objections to the secured claims of Bellwood and Mid American, in which he addressed the recent Supreme Court decision. The Court subsequently took the matter under advisement.

B. *Mid American National Bank and Trust Company*

Like Bellwood, Mid American filed a secured claim against the Debtor which is also the subject of the Trustee's same objection. Additionally, Mid American was the defendant in a separate adversary proceeding timely filed by the Trustee which

1. On November 18, 1991, Bellwood presented a motion to file a brief in excess of fifteen pages. That motion was granted and Bellwood's thirty-seven page memorandum in support of its motion for judgment on the pleadings was thereafter filed on November 21, 1991. Since then, all parties have filed memoranda well exceeding the pagination limits under Local Rule 9(d) of the United States District Court for the Northern District of Illinois. Local Rule 9(d) is applicable in all proceedings before this Court pursuant to General Order dated May 6, 1986. In light of the prolixity and repetition in same, necessitating this lengthy and extensive Opinion by the Court in order to address all the points raised by the parties, the Court now better appreciates the wisdom of the drafters of the Rule and the merits of the adage "less is more." Future motions to exceed the pagination limits of Local Rule 9(d) in other matters will receive closer scrutiny and less frequent allowance.

sought to avoid two transfers of cash as preferential under section 547. To facilitate the resolution of this objection, Mid American and the Trustee submitted an agreed settlement to this Court on October 11, 1991. Essentially, the agreed order settled the pending adversary proceeding (hereinafter referred to as the "Preference Litigation") and stipulated to the facts in this matter for the purpose of allowing the Court to decide the merits of the Trustee's claim objection. A summary of the parties' agreement provides that:

(i) the Preference Litigation would be settled (subject to approval of this Court pursuant to Bankruptcy Rule 9019) in accordance with the terms of the submitted stipulation and the terms of a settlement agreement and release. Pursuant to such agreement, but subject to the outcome of the equitable lien claim described in (ii) below, the Trustee would be allowed to deduct from Mid American's claim, whether allowed as a secured or unsecured claim, the sum of $235,000.00.

(ii) the issue of whether or not Mid American is entitled to a judicial declaration of an equitable lien in the amount of $305,000.00 would be determined in the present proceeding.

(iii) the issues in this proceeding, including the equitable lien claim, are to be determined, without prejudice to any party, by and pursuant to acts as stipulated to in the stipulations submitted and by and pursuant to the parties' memoranda.

The stipulated facts are the following: On or about May 31, 1988, Mid American agreed to loan the Debtor $3,000,000.00 on a "cash on cash" basis (hereinafter referred to as the "Loan Agreement"). (Mid American Memorandum in Response Exhibit No. A, hereinafter referred to as "Stipulation I"). Pursuant to the Loan Agreement, Mid American held $3,000,-000.00 in an investment account ("Collateral Account") as a source for full repayment of the loan. (Stipulation I, ¶ 3).

On or about November 1, 1988, the Debtor caused certain financial statements to be delivered to Mid American for the purpose of modifying the Loan Agreement. Based upon these statements and the Debtor's representations of prompt payment, Mid American modified the Loan Agreement to allow the Debtor to borrow $1,500,000.00 from the Collateral Account for a ten day period. (Stipulation I, ¶ 4). On November 7, 1988, Mid American approved the loan modification (hereinafter referred to as "Loan Agreement Modification") governed by Ohio law, and released to Stoecker $1,500,000.00 (Mid American Memorandum in Opposition Exhibit No. C); (Stipulation I, ¶ 4).

On November 18, 1988, the Debtor issued a personal check in the amount of $1,500,000.00 to replace the funds borrowed from the Collateral Account. (Mid American Memorandum in Opposition Exhibit No. B, p. 5). The check, however, received by Mid American on November 21, 1988, was "unfunded." (Mid American Memorandum in Opposition Exhibit No. B, p. 5). In order to partially fund the check, the Debtor caused $230,000 to be transferred to Mid American on or about December 8, 1988. (Stipulation I, ¶ 6). Less than two weeks later, the Debtor caused an additional $75,000.00 to be transferred to Mid American around December 20, 1988. (Stipulation I, ¶ 7).

Due to the Debtor's default under the terms of the Loan Agreement and Loan Agreement Modification, Mid American filed suit against him in Ohio. Around February 2, 1989, Mid American secured a judgment against the Debtor in the amount of $1,199,843.00. (Stipulation I, ¶ 14); (Mid American Memorandum in Response Exhibit No. C, hereinafter referred to as "Stipulation II"). In order to enforce its judgment against the Debtor, Mid American immediately registered its judgment in Cook County, Illinois, on February 3, 1989. (Stipulation II, ¶ 3). Shortly thereafter, Mid American recorded in DuPage County, Illinois, its previously registered judgment. (Stipulation II, ¶ 3). Mid American followed similar filing requirements and registered its judgment in Milwaukee County,

Wisconsin. (Stipulation II, ¶ 3). The Trustee concedes that Mid American has properly perfected its judgment liens against the Debtor. (Stipulation II, ¶ 5).

On August 10, 1989, Mid American timely filed a proof of claim with all documentation showing its judgment liens. (Mid American Memorandum in Opposition Exhibit No. O). After the case was converted to a Chapter 7 proceeding, Mid American again filed its proof of claim on May 4, 1990. *Id.*

On March 11, 1991, the Trustee filed an adversary proceeding against Mid American seeking to recover the two payments totalling $305,000.00, as preferential transfers under section 547(b) (previously referred to as the "Preference Litigation"). The Trustee, however, did not seek to avoid Mid American's perfected judgment liens.

On August 31, 1991, the Trustee filed his objections to the allowance of certain proofs of claim in which he classified Mid American's claim as unsecured. In response, and prior to this Court's October 11, 1991, hearing on the Trustee's objections, Mid American filed a memorandum opposing the classification of its claim as unsecured. Also before the October hearing, the Trustee replied and argued that Mid American's judgment liens were avoidable under section 547 by virtue of section 502(d).

On October 11, 1991, the Court entered an order allowing the parties to further brief the issue of whether the Trustee can properly object to Mid American's secured claim. Due to the agreed order and stipulated facts, the parties have focused their arguments on the interplay of sections 546 and 502 and the equitable lien asserted by Mid American against the $305,000.00 it was paid by the Debtor.

The Trustee's objection to Mid American's proof of claim centers on the time during which Mid American obtained and perfected its judgment liens. The Trustee contends that Mid American's judgment liens are preferential transfers avoidable under section 547. Mid American concedes that the judgment liens meet all the elements of a preferential transfer under sec-

tion 547, but denies that the Trustee can avoid the judgment liens because of section 546(a). That section precludes any preference avoidance action initiated beyond two years of the appointment of the Trustee. The Trustee's claim objection originates beyond two years from the date that the judgment liens were obtained or perfected. Consequently, Mid American contends that the Trustee's claim objection is now time barred.

The Trustee counters by arguing that section 546(a) has no application to this proceeding because the objection originates under section 502(d) which contains no such time limitation. Accordingly, the Trustee concludes that this section 502(d) objection to Mid American's secured claim is timely and that no dividend should be paid to Mid American because it has retained both the preferential cash payments totalling $305,000.00 and its judgment liens. Moreover, the Trustee argues that under applicable authority, Mid American is not entitled to assert an equitable lien.

## III. DISCUSSION

### A. *Procedural Posture for Resolution of Objections to Claims*

■ Mid American has agreed that this matter should be resolved in the context of the contested claim it filed, without the need for filing another adversary proceeding which would compound the time and expense to the parties. Bellwood, on the other hand, contends that the Trustee should have filed an adversary proceeding. Federal Rule of Bankruptcy Procedure 3007 governs objections to claims and provides:

> An objection to the allowance of a claim shall be in writing and filed. A copy of the objection with notice of the hearing thereon shall be mailed or otherwise delivered to the claimant, the debtor or debtor in possession and the trustee at least 30 days prior to the hearing. If an objection to a claim is joined with a demand for relief of the kind specified in

Rule 7001, it becomes an adversary proceeding.

Fed.R.Bankr. P. 3007.

The Advisory Committee Note to Bankruptcy Rule 3007 states: "[t]he contested matter initiated by an objection to a claim is governed by Rule 9014, unless a counterclaim by the trustee is joined with the objection to the claim. The filing of a counterclaim ordinarily commences an adversary proceeding subject to the rules in Part VII." Fed.R.Bankr. P. 3007 Advisory Committee Note (1983), para. 2. Moreover, a leading treatise comments: "[i]t is possible for the trustee to dispute the secured status of a creditor filing a proof of claim by denial and affirmative defense without filing a counterclaim. Unless the creditor can establish its secured status, its claim will be disallowed as a secured claim." 9 *Collier on Bankruptcy*, ¶ 7001.05 at 7001–14 (15th ed. 1991). The Trustee has not asserted a counterclaim seeking affirmative relief from Bellwood or Mid American, or made a demand for relief of the kind specified in Bankruptcy Rule 7001. *Compare In re Grabill Corp.*, 121 B.R. 983, 992 (Bankr.N.D.Ill.1990) (adversary proceeding required where trustee sought affirmative relief in a counterclaim).

■ The Court agrees with the decision of *In re America's Shopping Channel, Inc.*, 110 B.R. 5 (Bankr.S.D.Cal.1990), which held that Bankruptcy Rule 7001 does not apply to the resolution of a claim objection, even when resolution of same involves determination of whether the creditor has received an avoidable preference, as long as the trustee does not include in the objection a demand for recovery of the money or property. *Id.* at 8. There the court stated: "in cases where the creditor has filed a proof of claim, the better rule is that an objection to that claim based upon an alleged preference may be resolved by motion and, as necessary, an evidentiary hearing, without the need to commence a separate adversary proceeding for each such claim." *Id. Accord In re Independent Clearing House Co.*, 41 B.R. 985, 1017 (Bankr.D.Utah 1984) (the allowance of claims may be decided on a motion for summary judgment); *see also* 9 *Collier on Bankruptcy*, ¶ 7001.05 at 7001–14 (15th ed. 1991).

Bellwood cites a myriad of cases for the proposition that the Trustee's claim objection is not proper until he affirmatively asserts and proves an avoidance action pursuant to section 547, which can only be done by way of adversary proceeding. The following is a list of those cases: *In re Marketing Resources International Corp.*, 35 B.R. 353 (Bankr.E.D.Pa.1984); *In re Commercial Western Finance Corp.*, 761 F.2d 1329 (9th Cir.1985); *In re Golden Plan of California, Inc.*, 829 F.2d 705 (9th Cir.1986); *In re Belco, Inc.*, 38 B.R. 525 (Bankr.W.D.Okla.1984); *In re Medical Equities, Inc.*, 83 B.R. 954 (Bankr.S.D.Ohio 1987); *In re Crabtree*, 51 B.R. 521 (Bankr.E.D.Tenn.1985); *In re Metropolitan Hosp.*, 110 B.R. 731 (Bankr.E.D.Pa.1990); *In re Sensor Systems, Inc.*, 79 B.R. 623 (Bankr.E.D.Pa.1987); *In re Shrum*, 98 B.R. 995 (Bankr.W.D.Okl.1989); *In re McKay*, 732 F.2d 44 (3d Cir.1984). The cases Bellwood relies upon are distinguishable from the matter at bar for several reasons. First, in many of those cases, the trustees joined the objections to claims with a demand for relief of the kind specified in Bankruptcy Rule 7001, namely the avoidance of liens. Hence, pursuant to Bankruptcy Rule 3007, the objections became adversary proceedings. In the instant matter, however, the Trustee does not seek to avoid Bellwood's liens. Rather, he simply seeks to disallow the claim as secured. Thus, those cases Bellwood relies upon are inapposite. In addition, many of the cases do not even address section 502(d) claim objections. Moreover, they are factually distinct. Consequently, these cases lend no support to Bellwood's position. Accordingly, pursuant to Bankruptcy Rule 3007, the Trustee may proceed with the claim objection as a contested matter under Bankruptcy Rule 9014 and no separate adversary proceeding is required under Bankruptcy Rule 7001.

■ Bellwood has filed a motion for judgment on the pleadings as well as a memorandum in support thereof. A motion for judgment on the pleadings pursu-

ant to Bankruptcy Rule 7012 is improper in a contested matter under Bankruptcy Rule 9014. Bankruptcy Rule 9014 provides that only certain rules in the 7000 series apply in contested matters under Bankruptcy Rule 9014. Bankruptcy Rule 7012 is not among the enumerated applicable rules. Bankruptcy Rule 9014 further provides that "[t]he court may at any stage in a particular matter direct that one or more of the other rules in Part VII shall apply." Fed.R.Bankr. P. 9014. Because the Court has not directed that the rules governing adversary proceedings shall apply to this contested matter, Bellwood's motion for judgment on the pleadings is inapplicable. Consequently, that motion will be denied. The Court will consider Bellwood's memorandum in support of its motion as a response to the merits of the Trustee's objection to its claim.

### B. *Standards for Contested Proofs of Claim*

When a creditor files a proof of claim executed in accordance with the Bankruptcy Rules, that proof of claim constitutes prima facie evidence of its validity and amount, Federal Rule of Bankruptcy Procedure 3001(f); *In re Kham & Nate's Shoes, No. 2, Inc.,* 97 B.R. 420, 424 (Bankr. N.D.Ill.1989); *In re Fogelberg,* 79 B.R. 368, 372 (Bankr.N.D.Ill.1986), unless the debtor or other party in interest objects. 11 U.S.C. § 502(a). Although overlooked by all parties, Bankruptcy Rule 3001(c) requires that "[w]hen a claim, or an interest in property of the debtor securing the claim, is based on a writing, the original or a duplicate shall be filed with the proof of claim." Fed.R.Bankr. P. 3001(c); *see also In re Lindell Drop Forge Co.,* 111 B.R. 137, 142 (Bankr.W.D.Mich.1990). In addition, subsection (d) of that Rule mandates: "[i]f a security interest in property of the debtor is claimed, the proof of claim shall be accompanied by evidence that the security interest has been perfected." Fed. R.Bankr. P. 3001(d). Hence, in order for a claim to be entitled to the weight afforded by Bankruptcy Rule 3001(f), it must comply with the rules and set forth the evidence necessary to support the claim. *In re Mar-*

*ino,* 90 B.R. 25, 28 (Bankr.D.Conn.1988); 8 *Collier on Bankruptcy,* ¶ 3001.05 at 3001–25 (15th ed. 1991). Thus, secured claimants who opt to file proofs of claim must comply with the requirements of Bankruptcy Rule 3001(c) and (d) in order to have their claims allowed as secured.

The prima facie validity of a properly filed proof of claim places the burden on the objector to introduce evidence rebutting this presumption. *In re Fidelity Holding Co.,* 837 F.2d 696, 698 (5th Cir. 1988); *In re Schaumburg Hotel Owner Ltd. Partnership,* 97 B.R. 943, 950 (Bankr. N.D.Ill.1989); *In re Chapman III,* 132 B.R. 132, 143 (Bankr.N.D.Ill.1991). Filing an objection to the claim without more is insufficient to overcome the rebuttable presumption. *In re Glenn,* 100 B.R. 763, 766 (Bankr.W.D.Pa.1989). Once the objector has produced some evidence disputing the validity of a claim, the burden shifts to the claimant. *In re Missionary Baptist Foundation,* 818 F.2d 1135, 1143–1144 (5th Cir. 1987); *In re Lampert,* 61 B.R. 785, 787 (Bankr.W.D.Wis.1986). Unless the creditor can establish its secured status, its claim will be disallowed as a secured claim. 9 *Collier on Bankruptcy,* ¶ 7001.05 (5th ed. 1991). Contrary to Bellwood's position, Bellwood as the claimant, not the Trustee as objector, bears the ultimate burden of establishing a valid claim by a preponderance of the evidence. *In re All–American Auxiliary Asso.,* 95 B.R. 540, 544–545 (Bankr.S.D.Ohio 1989); *In re Farmers' Co-op of Arkansas & Oklahoma, Inc.,* 43 B.R. 619, 620 (Bankr.W.D.Ark.1984).

### C. *Claims Filed by Bellwood and Mid American*

In this case, Bellwood timely filed a proof of claim. Bellwood asserts it is entitled to allowance of a secured claim in the sum of $750,000.00, less the $11,333.33 reduction agreed to by the parties pursuant to the Settlement Agreement in the adversary proceeding. Bellwood's filed claim, however, does not constitute sufficient prima facie evidence of the alleged secured status of its claim. The proof of claim references the fact that copies of the prom-

issory note and all other documentation pertaining to the loan and judgment were furnished to the Trustee. This, however, is insufficient under Bankruptcy Rule 3001(c) and (d). The writings securing the claim must be filed along with the claim so the Court can determine its sufficiency and allowance.

The record before the Court is devoid of any supporting documents or evidence proving that Bellwood has a secured claim. Bellwood has failed to furnish the Court the underlying documents evidencing the loan and the specific collateral encumbered by Bellwood's judgment, execution and citation liens and levies. Such failure on the part of Bellwood to provide these essential documents supporting its proof of claim as required by Bankruptcy Rule 3001(c) and (d), compels the Court to find that Bellwood has failed to establish that it possesses a valid secured claim against the estate or some of the assets or proceeds in the Trustee's possession. As a consequence, Bellwood's claim must be disallowed as secured. Although this result may seem harsh, the Court cannot trace Bellwood's assertions of secured status to specific property *res* or proceeds in the Trustee's hands. Bellwood has the ultimate burden of adequately establishing that it has a valid secured claim. The provisions of Bankruptcy Rule 3001(c) and (d) are mandatory, not directory. Even though the Court has disallowed Bellwood's secured claim, it will discuss the remaining issues raised by the parties.

■ A portion of Bellwood's argument relates to contentions that its claim was the resultant product of wrongful actions by the Grabill trustee in the related corporate cases, by compelling it to release or disgorge partial satisfaction of its judgment against the Debtor, which proceeds in turn were paid over to the Trustee in this case. If so, Bellwood could have sued the Trustee for turnover, but it did not (probably anticipating the Trustee asserting the avoidable preference). If the Trustee sold various items of real or personal property with liens to attach to proceeds, then tracing of Bellwood's claimed liens to the pro-

ceeds could, and should have been furnished the Court. The Court is not obliged to attempt to reconstruct the record of proofs needed by an allegedly secured creditor to whose claim the Trustee has objected. Bellwood incorrectly concludes that the Trustee indirectly seeks to avoid its liens and assert a preference by raising section 502(d) without filing a timely adversary proceeding. To the contrary, Bellwood has filed and asserted a secured proof of claim without complying with Bankruptcy Rule 3001(c) and (d) and demands to be paid in full, notwithstanding its failure to prove its liens, unavoidable though they might be.

■ In marked contrast, Mid American's supporting memorandum in opposition to the Trustee's objection contains copies of all relevant underlying documents, including, but not limited to, the proof of claim supported by a copy of its judgment in Ohio, and the pleadings by which same was registered in Cook and DuPage Counties, Illinois and Milwaukee County, Wisconsin. Mid American's filed proof of claim meets the requirements of Bankruptcy Rule 3001(c) and (d) and shows prima facie its claimed secured status as provided in Bankruptcy Rule 3001 and section 502(a).

D. *Whether the Trustee's Section 502(d) Objections are Time Barred Under Section 546(a)*

The time during which Bellwood and Mid American obtained and perfected their judgment and other liens is the genesis of the Trustee's objection to their proofs of claim. The Trustee contends that both claims were secured by means of avoidable preferential transfers under section 547 and should be disallowed pursuant to section 502(d). Section 502(d) provides:

Notwithstanding subsections (a) and (b) of this section, the court shall disallow any claim of any entity from which property is recoverable under section 542, 543, 550 or 553 of this title or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549 or 724(a) of this title, unless such entity or transferee has paid the amount,

or turned over any such property, for which such entity or transferee is liable under section 522(i), 542, 543, 550 or 553 of this title.

11 U.S.C. § 502(d).

Bellwood and Mid American concede that their liens were preferential transfers under section 547,[2] but deny that the Trustee can now object to their claims. Bellwood and Mid American argue that section 546(a) precludes the Trustee from objecting to potentially unavoidable claims under section 502(d). Specifically, section 546(a) precludes the commencement of any preference avoidance action beyond two years of the appointment of a trustee, providing in pertinent part:

> An action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of—
>
> (1) two years after the appointment of a trustee under section 702, 1104, 1163, 1302, or 1202 of this title; or
>
> (2) the time the case is closed or dismissed.

11 U.S.C. § 546(a).

Because the Trustee's claim objections originate beyond two years from the date that he was appointed, Bellwood and Mid American contend that the Trustee cannot now object to allowance and full payment of their secured proofs of claim under section 502(d). In response, the Trustee argues that section 546(a) has no application because he is merely objecting to allowance and payment of their claims as secured under section 502(d), and not attempting to avoid those liens under section 547 from which he is barred by section 546(a). Section 502 deals with the allowance of claims

or interests, and permits a court to disallow any claim of a transferee which is (or was potentially) avoidable under section 547, unless and until the transferee of the preference disgorges same. In this case, neither claimant has released any of its judgment or other liens. Section 502(d) does not reference section 546, nor itself prescribe any time period during which the Trustee must object. Accordingly, the Trustee concludes that his objection is timely, and that both claims should be disallowed as secured.

■ Thus, the central issue facing the Court is whether the Trustee may now invoke section 502(d) to disallow secured claims as formally potentially voidable preferential transfers under section 547, even though he is precluded from now filing such avoidance actions pursuant to section 546(a). The text of section 502(d) silently speaks to this issue by omitting any reference to section 546(a). Both the Bankruptcy Code and the Bankruptcy Rules are silent regarding a limitations period for objecting to claims. 11 U.S.C. § 502(a); Fed.R.Bankr. P. 3007; *see also In re Kolstad*, 928 F.2d 171, 174 (5th Cir.1991); *In re Washington Mfg. Co.*, 118 B.R. 555, 559 (Bankr.M.D.Tenn.1990); *In re Presque Isle Apartments, L.P.*, 118 B.R. 331, 332 (Bankr.W.D.Pa.1990); *In re Mahan*, 104 B.R. 300, 301 (Bankr.E.D.Cal.1989). Similarly, section 546(a) is devoid of any reference to section 502(d) or a time period during which the trustee must object to a claim. Section 546(a) imposes a time limitation upon the commencement of an avoidance action which Bankruptcy Rule 7001 requires by way of an adversary proceed-

---

**2.** Pursuant to section 502(d), the Court must determine whether Bellwood and Mid American received preferential transfers under section 547. Bellwood and Mid American have conceded for purposes of this matter that their judgment, execution and citation liens and levies resulted from preferential transfers. Even if Mid American and Bellwood had not conceded this point, the Court finds that the Trustee has made a prima facie showing that such liens were preferential transfers. Section 547(b) requires that the Trustee prove five elements to establish a voidable preference. The elements are as follows: (1) the Debtor's interest in property was transferred to or for the benefit of

Bellwood and Mid American; (2) the transfers were made for or on account of an antecedent debt; (3) the transfers were made while the Debtor was insolvent (which is presumed for the relevant periods here pursuant to section 547(f)); (4) the transfers were made within ninety days of the filing of the bankruptcy petition; and (5) the transfers enabled Bellwood and Mid American to receive more than they would have received if the transferred property had remained in the bankruptcy estate and was distributed under Chapter 7. *In re Energy Cooperative, Inc.*, 832 F.2d 997 (7th Cir.1987); *Barash v. Public Finance Corp.*, 658 F.2d 504, 507 (7th Cir.1981).

ing, instead of a contested matter under Bankruptcy Rule 9014.

Bellwood and Mid American devoted a significant amount of their memoranda toward interpreting the wording of sections 546(a) and 502(d). Their interpretations and emphasis on the various portions of the statutory text, grammar, and structure utilized differ greatly from that of the Trustee. The Trustee's position appears to be supported by the majority of other courts which have been presented with this issue. Not surprisingly, Bellwood and Mid American urge the Court to follow the contrary minority approach of other courts.

This Court is bound by the plain language of the statute absent a persuasive reason to the contrary. *In re Clark*, 738 F.2d 869, 872 (7th Cir.1984). The U.S. Supreme Court has counseled that a court should read a statute according to its literal terms, *e.g. United States v. Locke*, 471 U.S. 84, 96, 105 S.Ct. 1785, 1793, 85 L.Ed.2d 64 (1985), unless such a reading would produce a result at odds with the Congressional intent. *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989).

Both parties seize upon certain words in section 502(d) to support their arguments. The text of the section provides that a court may disallow a claim which *is recoverable* under sections 542, 543, 550, or 553, or *is avoidable* under sections 522(f), 522(h), 544, 547, 548, 549, or 724(a) (emphasis added). Mid American construes this language as permitting a trustee to object to a claim only if the trustee can then sue to establish liability under one of the enumerated sections contained therein. In a similar vein, Bellwood argues that the language of section 502(d) focuses on the *liability* for a transfer, unlike section 57(g) of the former Bankruptcy Act which focused on the *voidability* of a transfer (emphasis added). In other words, Bellwood and Mid American contend that section 502(d)'s text requires the Court to first look to the date when the Trustee seeks to disallow a claim. If the time for commencing an avoidance action has run under section 546(a), then the Trustee cannot establish liability, and

thus is precluded from objecting to the claim under section 502(d).

■ The fatal flaw in this argument rests in Bellwood's and Mid American's attempt to redefine the elements of a recoverable or avoidable transfer to include the limitations period of section 546(a) as an essential element of a preferential transfer. A transfer is avoidable under section 547 if it meets all the elements contained therein. *See* 11 U.S.C. § 547(b). Bellwood and Mid American urge the Court to add to section 502(d) the additional element of time found in section 546(a). That section, however, has nothing to do with the essential elements necessary to establish an avoidable preferential transfer. Rather, it limits the time after a trustee is appointed during which a trustee must file an adversary proceeding to avoid a transfer. The time within which such suit must be filed, however, in no way establishes any essential element of such transfer as preferential under section 547(b)(1)–(5). Therefore, a literal reading of section 502(d) would permit a trustee to object to payment of a dividend on a claim held by a creditor retaining a preference, so long as that preference meets all of the elements of section 547, whether or not the time limit prescribed by section 546(a) has expired. Significantly, the express language of section 502(d) never once references section 546(a). If such a limitations period on claim objections under section 502(d) was intended by Congress, it easily could have included a reference to section 502(d) in section 546(a).

Cutting through Bellwood's and Mid American's creative use of semantics, their arguments attempt to confuse the claims objection and allowance process under Bankruptcy Rules 3001–3011 with avoidance and recovery actions filed under Bankruptcy Rule 7001 and all the other rules governing adversary proceedings. Bellwood and Mid American argue, for example, that a section 502(d) claim objection to a preferential transfer requires the Court to first determine whether a creditor is liable under section 550. Determining liability, however, requires an avoidable

transfer under section 547, which in turn necessitates an adversary proceeding having been commenced within the time limitation of section 546(a). According to Bellwood and Mid American, only after the Court has completed its analysis under the four linked sections, can it then determine whether the Trustee's objection should prevail. Thus, the Court should disallow a claim under section 502(d) only if an adversary proceeding has been, or is still capable of being timely filed under section 546(a). Otherwise, if the Trustee has let the section 546(a) limitations run and he is barred from maintaining an avoidance action under sections 547 and 550, he is also barred from objecting under section 502(d) to a filed proof of claim secured by a now unavoidable preference. The Court declines to follow this approach for reasons grounded in the history and plain meaning of the statutory text of section 502(d), applicable rules, and the Congressional policy favoring pro rata distribution of bankruptcy estates among claimants in the same class of relative priority.

1. HISTORICAL BACKGROUND AND COMPARISON OF CLAIM OBJECTIONS AND AVOIDANCE ACTIONS UNDER THE FORMER BANKRUPTCY ACT AND THE PRESENT BANKRUPTCY CODE

By equating the claims allowance process with avoidance actions, Bellwood and Mid American conveniently incorporate and engraft the time limits of section 546(a) into section 502(d). Claim objections and avoidance actions, however, are separate and distinct proceedings which use different rules and procedures to accomplish distinct and discrete portions of the administration of a bankruptcy estate. Under the former Act, the U.S. Supreme Court recognized this distinction in *Katchen v. Landy*, 382 U.S. 323, 330, 86 S.Ct. 467, 473, 15 L.Ed.2d 391 (1966). There, the creditor filed a proof of claim and the trustee filed an objection under section 57(g) of the Act. Although the central issue involved the distinction between plenary and summary jurisdiction under the Act, the Court determined that a bankruptcy court could resolve the issue of a preference in the context of a section 57(g) claim objection. In other words, a trustee need not file a separate action under the avoiding powers of section 60. *Id.* at 333–335, 86 S.Ct. at 475–476.

The *Katchen* decision underscored the continuing fundamental difference under the Code between the claims allowance process normally involving contested matters procedures under Bankruptcy Rule 9014, and avoidance actions which always require formal adversary proceedings commenced under Bankruptcy Rule 7001. Under the Code, claim objection procedures closely resemble claim objection procedures under section 57(g) of the Act. Under the *Katchen* analysis, a separate avoidance action need not be instituted to adjudicate whether a transfer is recoverable or avoidable under the claims allowance process. Logically, because a separate section 547 adversary proceeding is not required for the claims allowance process, section 546(a)'s limitations period is inapplicable.

Bellwood and Mid American dismiss any comparison of section 502(d) to the past practices regarding the claims allowance process invoked under section 57(g). For support both parties cite *In re ZZZZ Best Co.,* — U.S. ——, 112 S.Ct. 527, 116 L.Ed.2d 514 (1991). In *ZZZZ Best,* the Court considered whether preferential payments on long-term debt could qualify for the ordinary course of business exception found in section 547(c)(2). The Ninth Circuit held that the ordinary course of business exception was unavailable to long-term creditors. *In re ZZZZ Best Co.,* 921 F.2d 968, 969 (9th Cir.1990). The Supreme Court reversed.

Conceding that the case is not factually on point, or involving construction of the statutory provisions at bar here, Bellwood and Mid American argue the importance of the decision rests in its manner of statutory construction of section 547(c)(2). The Supreme Court's analysis began and ended with an examination of the text of section 547. Given the clarity of the statutory text, the Court refused to entertain the trustee's arguments based on past practices and legislative history. Accordingly, the

Court stated that the trustee carried a heavy burden of persuading the Court that Congress intended to create or to preserve a special rule for long-term debt. *Id.* at 530.

Bellwood and Mid American argue that this Court, like the *ZZZZ Best* Court, should avoid any analysis of the pre-Code statutes and case law construing sections 546(a) and 502(d). This argument is unconvincing. *ZZZZ Best* is inapposite and inapplicable because it did not involve or discuss either section 502(d), 546(a) or any relation between the two sections. Rather, *ZZZZ Best* involved the proper construction of section 547(c)(2), not at issue in these contested claims. On one hand, Bellwood and Mid American urge a tortured reading of section 502(d) which superimposes section 546(a)'s time limitation through their linking of various Code sections. In the same breath, however, they claim the Court cannot look to legislative history and past practices to determine whether Congress envisioned the contorted reading advocated. They forget, however, that "[w]hen Congress amends the bankruptcy laws, it does not write 'on a clean slate.'" *Dewsnup v. Timm*, — U.S. —, 112 S.Ct. 773, 779, 116 L.Ed.2d 903 (1992) (citation omitted). Moreover, the Supreme Court is "reluctant to accept arguments that would interpret the Code, however vague the particular language under consideration might be, to effect a major change in pre-Code practice that is not the subject of at least some discussion in the legislative history." *Id.*

Thus, the logic and lines of Bellwood's and Mid American's arguments, and a substantial portion of their voluminous memoranda, require evaluation of the past practices and legislative history of the present Code provisions and the claims allowance process. This is necessary to determine whether Congress intended to modify the claims allowance process by subjecting section 502(d) claim objections to the same section 546(a) statute of limitations concerning avoidance actions.

As previously noted, section 546(a) contains no language referring to section 502(d). Similarly, section 502(d) omits any reference to section 546(a). Given the language of the statutory text, and the absence of either section by way of cross-reference or incorporation of one in the other, Bellwood and Mid American carry the burden to show that Congress intended to superimpose the time limitation prescribed by section 546(a) upon claim objections raised under section 502(d). The parties submit divergent interpretations of sections 502(d) and 546(a). Consequently, a review of their antecedents under the Bankruptcy Act as well as the supporting caselaw would prove insightful. *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 244, 109 S.Ct. 1026, 1032, 103 L.Ed.2d 290 (1989) (the court will look to pre-Code practice for interpretative assistance); *In re America's Shopping Channel, Inc.*, 110 B.R. 5, 8 (Bankr.S.D.Cal.1990) (cases decided under the Act can be of assistance in understanding the Code). Because what is the plain meaning of section 502(d) to the Trustee is at odds with its plain meaning to Bellwood and Mid American, analysis and comparison of the language employed under the Act with that used in the Code is instructive.

The language of sections 57(g) and 11(e) under the former Act is strikingly similar to that of sections 502(d) and 546(a), respectively. The legislative history of section 502 indicates that subsection (d) was predicated upon section 57(g) of the Act. H.R.Rep. No. 595, 95th Cong., 1st Sess. 354 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 64 (1978), *reprinted in,* U.S.Code Cong. & Admin. News 1978, 5787, 5851, 5963 and 6310; *See e.g. In re Mid Atlantic Fund, Inc.*, 60 B.R. 604, 610 (Bankr.S.D.N.Y. 1986). The text of section 57(g) provided:

> The claims of creditors who have received or acquired preferences, liens, conveyances, transfers, assignments or encumbrances, void or voidable under this Act, shall not be allowed unless such creditors shall surrender such preferences, liens, conveyances, transfers, assignments, or encumbrances.

11 U.S.C. § 93(g) (repealed 1978).

Although section 546 is devoid of any legislative history which specifically identi-

fies its forerunner under the Act, courts have identified section 11(e) as its predecessor. *In re Sims Bros. Builders, Inc.*, 35 B.R. 149, 150 (Bankr.S.D.Ohio 1983). Like section 546(a), section 11(e) of the Act contained a two year statute of limitations which applied when a trustee:

> institut[ed] proceedings in behalf of the estate upon any claim against which the period of limitations fixed by Federal or State Law had not expired at the time of the filing of the petition in bankruptcy.

11 U.S.C. § 29(e) (repealed 1978).

As noted by the *Katchen* decision, the courts treated the claims allowance process as separate and distinct from avoidance actions. Only three years before Congress adopted the Code, the First Circuit confronted the applicability of section 11(e)'s time limitation to a trustee's claim objection under section 57(g) in *In re Cushman Bakery*, 526 F.2d 23 (1st Cir.1975), *cert. denied, Agger v. Seaboard Allied Milling Corp.*, 425 U.S. 937, 96 S.Ct. 1670, 48 L.Ed.2d 178 (1976). After an extensive analysis of both sections, the First Circuit held section 11(e) inapplicable to the trustee's objection under section 57. *Cushman*, 526 F.2d at 35–36.

Shortly thereafter, the Seventh Circuit followed *Cushman's* reasoning and holding in *In re Meredosia Harbor & Fleeting Service, Inc.*, 545 F.2d 583 (7th Cir.1976), *cert. denied*, 430 U.S. 967, 97 S.Ct. 1649, 52 L.Ed.2d 359 (1977). There, a creditor filed a claim and the trustee objected on the grounds that its claim was a preference. The creditor bank invoked section 11(e)'s time limitation as a defense to the trustee's objection. The Seventh Circuit refused to expand section 11(e)'s time limitation to disallow the trustee's objection:

> Section 11(e) is not applicable here where the trustee filed no [preference] suit on behalf of the debtor. Rather, the lienholders asserted their claims against the trustee. [footnote omitted]. As the bankruptcy referee observed, Section 11(e) "does not come into play when [the trustee] defends money in his hands

from creditors whose claims would be preferential if successful."
*Meredosia*, 545 F.2d at 590.

As demonstrated by the case law, courts treated the claims allowance process as a defensive measure to reducing claims that could have been otherwise avoided and recovered under other sections. Consequently, Congress had clear direction that the courts would not impose a time limitation on the claims allowance process. Had Congress sought to rectify the absence of such a time limit on a trustee's claim objection, it could have easily done so. *See In re Pullman Constr. Industries, Inc.*, 132 B.R. 359, 362 (Bankr.N.D.Ill.1991) (the meaning of a statute is illuminated by action Congress takes or chooses not to take in response to judicial interpretations of it). Congress in no way, however, expressly modified the claims allowance process by establishing any limitations periods on objections to claims. Moreover, nothing in the legislative history indicates that Congress intended to alter the prior claims allowance process. H.R.Rep. No. 595, 95th Cong., 1st Sess. 354 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 65 (1978). Clearly, the past practices and legislative history surrounding the claims allowance process do not support Bellwood's and Mid American's strained conclusion that Congress intended any linking of various Code sections to superimpose a time limitation on the claims allowance process.

## 2. DISCUSSION OF MAJORITY AND MINORITY APPROACHES UNDER THE BANKRUPTCY CODE

Consistent with past practice, most bankruptcy courts have likewise construed section 502(d) as a defensive measure which precludes entities having received a voidable transfer from sharing in the distribution of the assets of the estate unless, and until, the voidable transfer has been returned to the estate. *In re Mid Atlantic Fund, Inc.*, 60 B.R. 604, 609 (Bankr. S.D.N.Y.1986). "Section 502 was not designed to punish, but to give creditors an option to keep their transfers (and hope for no action by the trustee) or to surrender their transfers and their advantages and

share equally with the other creditors." *In re Georgia Steel, Inc.*, 38 B.R. 829, 839 (Bankr.M.D.Ga.1984). It has also been said that "[s]ection 502(d) is designed to foster the 'restoration' of assets to a debtor's estate, thereby assuring 'equality of distribution' of the estate's assets by precluding anyone who has received a voidable transfer from sharing in any distribution or burdening an estate with continuing litigation unless he first pays back any preference that he has received." *In re Chase & Sanborn Corp.*, 124 B.R. 368, 371 (Bankr.S.D.Fla.1991). The mandatory disallowance provided for in section 502(d) is applicable to secured claims as well as unsecured claims. *Mid Atlantic*, 60 B.R. at 609. In light of court interpretation, Congress has done nothing to change the treatment of claims under section 502(d). *Compare* legislative history of 11 U.S.C. § 1113 indicating that it was added to reverse the U.S. Supreme Court decision in *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984); legislative history of 11 U.S.C. § 523(a)(3) indicates it was intended to overrule *Birkett v. Columbia Bank*, 195 U.S. 345, 25 S.Ct. 38, 49 L.Ed. 231 (1904).

■ Under section 57(g) of the Act, courts held that creditors who received preferential transfers were required to return same. *See e.g., Katchen v. Landy*, 382 U.S. 323, 330 (1966); *In re Colonial Services Co.*, 480 F.2d 747, 749 (8th Cir. 1973); *In re Hudson Feather & Down Products, Inc.*, 22 B.R. 247 (Bankr. E.D.N.Y.1982). Pursuant to section 502(d), the claims of creditors who have received preferential transfers must be disallowed until those preferential transfers are surrendered to the estate. *See In re Universal Clearing House Co.*, 62 B.R. 118 (D.Utah 1986); *In re Coral Petroleum, Inc.*, 60 B.R. 377, 383 (Bankr.S.D.Tex.1986); *In re First International Services Corp.*, 37 B.R. 856, 860 (Bankr.D.Conn.1984); *In re Mastercraft Record Plating, Inc.*, 32 B.R. 106, 109 (Bankr.S.D.N.Y.1983) *rev'd on other grounds*, 39 B.R. 654 (S.D.N.Y. 1984); *In re Moriarty*, 22 B.R. 689, 690 (Bankr.D.Neb.1982).

Bellwood and Mid American dig a deeper hole in their attempt to construe the plain language of section 502(d) by using a negative to prove a positive. They claim that had Congress wanted section 546(a) not to apply to the claims allowance process under section 502(d), it could have so indicated. According to Bellwood and Mid American, Congress' silence, therefore, means that section 546(a) applies to section 502(d). This distorted logic clashes with the principle of *expressio unius est exclusio alterius*. This maxim of statutory interpretation means the expression of one thing is the exclusion of another. Black's Law Dictionary, p. 521 (6th ed. 1990); *see In re Newman*, 903 F.2d 1150 (7th Cir. 1990). Accordingly, Congress could have imposed a time limitation upon a trustee's section 502(d) objection, and its failure to do so precludes the Court from imposing one by implication. Indeed, section 502(d) is devoid of any reference to section 546(a) or its time limitation. Instead, section 502(d) expressly enumerates various sections covered, but excludes the subject limitations argued by these creditors by not including section 546(a).

Adding additional support is the case of *In re Mid Atlantic Fund, Inc.*, 60 B.R. 604 (Bankr.S.D.N.Y.1986), which is directly on point. There, several creditors obtained a $113,087.50 judgment. After attempts to collect on the judgment, the creditors entered into an agreement with Mid Atlantic whereby the debtor paid $12,500.00 in cash and assigned a $30,000.00 mortgage secured by real property as collateral for payment of the remainder. 60 B.R. at 606. The creditors, however, failed to record the assignment. *Id.* Shortly thereafter, an involuntary petition put Mid Atlantic in bankruptcy. *Id.* The appointed trustee failed to either commence an adversary to recover the cash payment or avoid the mortgage assignment. *Id.* After the section 546(a) statute of limitations expired, the creditors sought recovery of the assigned mortgage. *Id.* at 607. The trustee relied on section 502(d) claiming the assignment violated sections 547 and 544. *Id.* The court held that the statute of limitations did not preclude the trustee from relying defensively

on section 502(d). *Id.* at 610–611. In rejecting a similar argument as that raised by Bellwood and Mid American, the court said:

> The argument that the use of the word "avoidable" in Code § 502(d) is intended to incorporate the statute of limitations fixed by Code § 546 seems to be grasping at straws when it is considered how much more directly and plainly the idea could have been expressed by using the word "timely" in front of avoidance or adding a reference to Code § 546.

*Mid Atlantic,* 60 B.R. at 610 n. 11.

Bellwood and Mid American fault the *Mid Atlantic* decision, and argue that the minority view espoused in the decisions *In re Marketing Associates of America, Inc.,* 122 B.R. 367 (Bankr.E.D.Mo.1991) and *In re Marketing Resources International Corp.,* 35 B.R. 353 (Bankr.E.D.Pa.1984) is better reasoned and dispositive of the present issue. There, the courts declined to follow *Mid Atlantic* and its progeny. Instead, the *Marketing Associates* court noted that section 502(d) requires disallowance of a claim that is "avoidable" under section 547. The court stated that the trustee must first bring a timely preference action in order to invoke section 502(d). The court found it implicit that no preference is "avoidable" if the action is not brought within the time limits prescribed by section 546(a). Because the statute of limitations had expired for a preference action, the court concluded that no preference was "avoidable" within the meaning of section 502(d). Consequently, the court refused to allow the trustee to utilize section 502(d) defensively to object to allowance of the creditor's claim.

In *Marketing Resources,* the debtor sued to recover alleged preferences, but the creditor filed counterclaims which the debtor sought to dismiss on grounds that the creditor had not returned the alleged preferences as required by section 502(d). The court, in denying the motion to dismiss the counterclaims, held that section 502(d) was not operative because the debtor had not obtained a judgment for avoidance and recovery of the preferences.

The Court finds the *Marketing Associates* and *Marketing Resources* reasoning unpersuasive and declines to follow either case. Section 502(d) does not reference section 546(a), which *Marketing Associates* judicially amends to include the statute of limitations found in section 546(a). Secondly, *Marketing Associates'* analysis fails to examine whether Congress intended a wholesale change in the past practices and legislative history surrounding the claims allowance process. Thirdly, nothing in section 502(d) restricts its use by a party objecting to a claim first obtaining a judgment in its favor as required by *Marketing Resources.* Lastly, *Marketing Associates* and *Marketing Resources* represent a minority view conflicting with many decisions.

A majority of the courts addressing the impact of section 546(a) on a trustee's objection raised under section 502(d) have concluded that section 546(a) has no application. *See e.g., In re Chase & Sanborn Corp.,* 124 B.R. 368, 370 (Bankr.S.D.Fla. 1991) ("the trustee [is] permitted to use § 502(d) defensively to disallow the preferred creditor's claim even though he could not obtain an affirmative judgment for the amount of the preference due to the bar of the statute of limitations."); *In re Minichello,* 120 B.R. 17, 20 (Bankr.M.D.Pa. 1990) ("[t]he trustee is not time barred from challenging the validity of the Bank's lien position"); *In re Mid Atlantic Fund, Inc.,* 60 B.R. 604, 610 (Bankr.S.D.N.Y.1986) (statute of limitations under section 546(a) did not preclude trustee from disallowing a claim under section 502(d)); *In re Tesmetges,* 87 B.R. 263, 269 (Bankr.E.D.N.Y.1988), *aff'd,* 95 B.R. 19 (E.D.N.Y.1988) (trustee's claim objection under section 502(d) was "not barred by any statute of limitations."); *In re Eye Contact, Inc.,* 97 B.R. 990, 992 (Bankr.W.D.Wis.1989); *In re Larsen,* 80 B.R. 784, 791 (Bankr.E.D.Va.1987) ("[w]hile the statute of limitations may bar an affirmative claim against [the creditor], this Court can discern no policy or statutory reason that would prevent [the trustee] from raising the unreturned preference in defense to [the creditor's] claims."). *Accord In re Presque Isle Apartments, L.P.,*

**138**

118 B.R. 331, 332 (Bankr.W.D.Pa.1990). Additionally, several courts have allowed a trustee to use section 502(d) to disallow a preferred creditor's claim even though he could not institute a preference action due to the bar of the statute of limitations. *See In re Chase & Sanborn Corp.,* 124 B.R. 368 (Bankr.S.D.Fla.1991); *In re Eye Contact, Inc.,* 97 B.R. 990 (Bankr.W.D.Wis. 1989); *In re Larsen,* 80 B.R. 784 (Bankr. E.D.Va.1987); *In re Mid Atlantic Fund, Inc.,* 60 B.R. 604 (Bankr.S.D.N.Y.1986).

Moreover, a majority of the courts confronting the scope of section 546(a) have steadfastly refused to expand section 546(a) to actions outside the Code sections enumerated therein. *See In re Lyons,* 130 B.R. 272, 276 (Bankr.N.D.Ill.1991); *In re Minichello,* 120 B.R. 17, 19–20 (Bankr. M.D.Pa.1990); *In re Ollada,* 114 B.R. 654, 655 (Bankr.E.D.Mo.1990); *In re Coan,* 96 B.R. 828, 831 (Bankr.N.D.Ill.1989); *In re Missouri River Sand & Gravel, Inc.,* 88 B.R. 1006, 1012 (Bankr.D.N.D.1988); *In re Central Foundry Co.,* 62 B.R. 52, 56 (Bankr.N.D.Ala.1985). As Judge Sonderby explained in *Coan:*

> The Section does not apply to actions outside the Code sections enumerated therein.... Moreover, § 546(a) is limited to proceedings initiated by a trustee; the section does not bar defensive reliance on the trustee's avoiding powers outside the two-year time limit.... The Trustee asserts the invalidity of Movants' lien in response to their Motion; he has not brought any adversary proceeding to determine or avoid that lien. Such action being purely defensive, it is not subject to § 546(a).

96 B.R. at 831. The great weight of authority under the Bankruptcy Act and Code supports the Trustee's position that section 546(a) is inapplicable to bar a claim objection, notwithstanding its applicable bar of an untimely filed avoidance or other adversary proceeding.

Finally, Bellwood turns to the defensive nature of the claims objection process. Bellwood contends that the Trustee is improperly using section 502(d) offensively as a sword to avoid Bellwood's lien.

The Court disagrees because the Trustee is not trying to recover money from or take property away from Bellwood. Rather, the Trustee seeks to pay Bellwood a prorated dividend as an unsecured creditor instead of the full amount of its claim. This is not offensive use of section 502(d) as a sword. Again, Bellwood engages in a game of semantics. It was Bellwood who filed a proof of claim, thus triggering the Trustee's objection and the provisions of section 502(d). By objecting to Bellwood's concededly otherwise preferential claim, the Trustee is shielding the estate's assets from a creditor attempting to elevate its status above the other general unsecured creditors. The Trustee seeks not to recoup property (which he cannot do because of section 546(a)), but rather, prevent the payment of a dividend on a claim not adequately proven at the expense and to the dilution of the dividends payable to other unsecured creditors. The Court finds Bellwood's argument disingenuous.

The plain language, past practices, and present treatment of section 502(d) fail to identify a time period during which the Trustee must object to an avoidable or recoverable transfer. The Court holds that the Trustee is not barred pursuant to the statute of limitations in section 546(a) from asserting an objection to allowance and payment of Bellwood's and Mid American's secured claims under section 502(d). Section 546(a) is not applicable to the claims allowance process and objections raised under section 502(d).

### E. *Bellwood's Right to a Jury Trial*

Bellwood contends in its answer that it is entitled to a jury trial in this matter. Bellwood, however, ignores a trilogy of Supreme Court cases which this Court is bound to follow. First, the Supreme Court stated in *Katchen v. Landy,* 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966) that " 'he who invokes the aid of the bankruptcy court by offering a proof of claim and demanding its allowance must abide by the consequences of that procedure.' " (citations omitted) *Id.* at 333 n. 9, 86 S.Ct. at 475 n. 9. Next, in *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 109

S.Ct. 2782, 106 L.Ed.2d 26 (1989), the Court stated:

> We read ... *Katchen* as holding that, under the Seventh Amendment, a creditor's right to a jury trial on a bankruptcy trustee's preference claim depends upon whether the creditor has submitted a claim against the estate....

*Id.* at 58, 109 S.Ct. at 2799.

Moreover, and directly on point, pursuant to *Langenkamp v. Culp*, 498 U.S. 42, 111 S.Ct. 330, 112 L.Ed.2d 343 (1990), once a creditor files a proof of claim, it no longer has a right to a jury trial. *Id.* 111 S.Ct. at 331; *see also In re Hooker Invest., Inc.*, 937 F.2d 833, 838 (2d Cir.1991). The filing of a claim in a bankruptcy case triggers the claims allowance process, which is based in equity. The *Langenkamp* court stated:

> In *Granfinanciera* we recognized that by filing a claim against a bankruptcy estate the creditor triggers the process of "allowance and disallowance of claims," thereby subjecting himself to the bankruptcy court's equitable power. [citation omitted]. If the creditor is met, in turn, with a preference action from the trustee, that action becomes part of the claims-allowance process which is triable only in equity.

*Id.* at 331.

The Court went on to further state:

> 'a creditor's right to a jury trial on a bankruptcy trustee's preference claim depends upon whether the creditor has submitted a claim against the estate.' [citation omitted]. Respondents filed claims against the bankruptcy estate, thereby bringing themselves within the equitable jurisdiction of the bankruptcy court. Consequently, they were not entitled to a jury trial on the trustee's preference action.

*Id.* at 331–332 *quoting Granfinanciera, supra.*

Although this is not a preference action against Bellwood, *Langenkamp* controls and applies. Because Bellwood filed a proof of claim, it triggered the claims allowance process, thereby subjecting itself to the bankruptcy court's equitable powers. The filing of its proof of claim constituted a waiver of Bellwood's right to a jury trial on the Trustee's objection. Thus, Bellwood's request for a jury trial is properly stricken.

F. *Whether the Settlement Agreement With Bellwood Precludes the Trustee From Asserting the Instant Section 502(d) Objection*

■ Bellwood's strongest and best argument is predicated upon the broad general release language of the Settlement Agreement reached between it and the Trustee in the adversary proceeding between them. Bellwood contends that the Settlement Agreement precludes the Trustee from asserting the instant section 502(d) objection to its claim because the language contained therein is sufficiently broad so as to encompass the instant objection. The Trustee counters that by raising an objection to Bellwood's proof of claim, he has not asserted any "claims, demands, or causes of action" proscribed by the Settlement Agreement. Moreover, the Trustee contends that Bellwood has asserted a claim against the estate by filing its proof of claim. As a result, the Trustee maintains that his objection simply raises a statutory defense to Bellwood's claim. Furthermore, the Trustee argues that the adversary proceeding sought to recover funds under section 547, which is distinct from the section 502(d) challenge to Bellwood's secured claim. The Trustee states that he did not give up his right to object or defend against Bellwood's claim by settling the adversary proceeding. He contends that the two are apples and oranges. Accordingly, the Trustee asserts that the Settlement Agreement did not address the allowance or disallowance of Bellwood's claim, nor did it constitute a waiver or release of any potential objections he may have had thereto.

■ The Settlement Agreement provides that Illinois law governs and controls its construction. When parties execute a settlement agreement containing a general release, the presumption is that it includes all matters in controversy and all demands existing between the parties at the time of the settlement. 11 Illinois Law and Practice, *Compromise and Settlement* § 8 at

90 (1981 and 1991 Supp.). The party claiming that the settlement did not include all such matters and demands has the burden of showing the omissions. *Id.* A broad general release need not list all specific types of actions included in the release. *See Rakowski v. Lucente,* 104 Ill.2d 317, 323, 84 Ill.Dec. 654, 657, 472 N.E.2d 791, 794 (1984). Voluntary resolution of litigation through settlement is favored by the courts. *Victory Beauty Supply Co. v. Lus–Ter–Oil Beauty Products Co.,* 562 F.Supp. 786, 789 (N.D.Ill.1983). A settlement agreement is a contract, *Reichelt v. Urban Invest. & Dev. Co.,* 611 F.Supp. 952 (N.D.Ill.1985), which cannot be unilaterally repudiated by any of the parties. *Debose v. Mueller,* 552 F.Supp. 307, 308 (N.D.Ill. 1982).

Construing the language of the Settlement Agreement as a whole, the Court finds that by the use of the broad language, the parties intended to extinguish all of the Trustee's objections to the claim of Bellwood, including the Trustee's objection in the instant matter. The Settlement Agreement provides that the Trustee releases Bellwood "from any and all claims, demands, or causes of action of any kind whatsoever ... including without limitation of the generality of the foregoing, all claims ... that ... could have been asserted in the adversary proceeding...." Although the language does not specifically define terms or reserve or except out the Trustee's objection to Bellwood's claim, the language is broad enough to encompass same. The modifying phrase "of any kind whatsoever" further broadens the scope of the general release given Bellwood. When utilizing a release as broad as the one used here, any attempt to precisely specify all matters included in the release would be unnecessary and might have detracted from the broad and general scope of the release. If the Trustee intended to reserve his rights to make a section 502(d) objection to Bellwood's filed proof of claim, same could easily have been spelled out as an exception or reservation to the broad release language.

Bellwood and the Trustee go to great lengths to now define the words used in the Settlement Agreement, quoting from Black's Law Dictionary, the Bankruptcy Code, other secondary sources and case authorities. The Trustee contends that his objection is in the nature of a "defense" and hence, not covered under the Settlement Agreement. Bellwood contends that the Trustee's objection is not in the nature of a defense, but rather a "claim," or a "demand" or a "cause of action." While the Trustee is correct in his assertion that no decisions equate the word claim with a section 502(d) objection, what he fails to concede is that the Settlement Agreement provided for more than just the undefined term "claims" to be released. The Court need not engage in further semantic haggling or categorize the Trustee's section 502(d) objection as a "defense" or a "claim." The Court finds that the language of the Settlement Agreement in its plain and ordinary usage was sufficiently broad so as to include the instant objection to Bellwood's claim. Even if the Court were to determine that the Trustee's section 502(d) objection constitutes a defense, as a general rule, a settlement agreement includes the primary claim as well as defenses and counterclaims with respect thereto. 15A C.J.S. *Compromise & Settlement* § 25, at 232 (1967 and 1991 Supp.). Consequently, a party having a defense to an original claim or cause of action will be precluded from setting up such defense. *Id.*

Bellwood's reliance on *In re Porter,* 50 B.R. 510 (Bankr.E.D.Vir.1985) in support of its position that the Settlement Agreement bars the Trustee's objection is misplaced. *Porter* involved a creditor's objection to the untimely proof of claim filed by the debtor's spouse. Litigation ensued involving the trustee and *inter alia* the debtor's wife with respect to the transfer of real property and a diamond ring. The court found these transfers violative of sections 548(a) and 544(b). That finding was subsequently appealed. The debtor's spouse made a settlement offer in the sum of $55,000.00. Thereafter, the district court approved the settlement and dismissed the appeal. The

issue raised by the creditor was the spouse's failure to return the diamond ring which the court found the transfer thereof voidable. The bankruptcy court held that the district court order did not specifically provide for the resolution of the dispute over the ring. Consequently, the court made no findings with respect to whether the ring was included in the settlement. *Id.* at 514. Such facts of *Porter* are distinguishable from the case at bar. Moreover, while *Porter* involved a compromise agreement, the court declined to apply section 502(d) because the issue of whether the diamond ring was a part of the compromise was unclear. *Id.* at 519. In fact, the court reserved ruling until future clarification of the district court order authorizing the compromise. *Id.* Bellwood's problem is that the Trustee holds the liquidated proceeds, unlike the more fortunate creditor spouse who held the diamond ring rather than the *Porter* trustee. Thus, Bellwood is not effectively being deprived of its option to keep possession of the alleged preference, the liens. Unlike most potential preference cases where the creditor has the property, in this case, the Trustee holds the liquidated cash proceeds from the sold real and personal property, not Bellwood.

 Bellwood additionally contends that the doctrine of res judicata or estoppel by judgment precludes the Trustee from objecting to its claim. The doctrine of res judicata bars claims which were actually decided in the prior action as well as any claims which could have been raised. *Lee v. Peoria,* 685 F.2d 196, 198 (7th Cir.1982). Thus, res judicata is the doctrine of claim preclusion rather than the narrower related doctrine of issue preclusion or collateral estoppel. The essential elements of res judicata are as follows: (1) an identity of parties or privies in the two suits; (2) an identity of the causes of action in both the prior and subsequent suits; and (3) a final judgment on the merits was entered in the prior action. *Brown v. J.I. Case Co.,* 813 F.2d 848, 854 (7th Cir.1987), *cert. denied,* 484 U.S. 912, 108 S.Ct. 258, 98 L.Ed.2d 215 (1987); *Shaver v. F.W. Woolworth Co.,* 840 F.2d 1361, 1364 (7th Cir.1988), *cert. denied,* 488 U.S. 856, 109 S.Ct. 145, 102 L.Ed.2d 117

(1988); *In re Energy Cooperative, Inc.,* 814 F.2d 1226, 1230 (7th Cir.1987), *cert. denied,* 484 U.S. 928, 108 S.Ct. 294, 98 L.Ed.2d 254 (1987); *Appley v. West,* 832 F.2d 1021, 1025 (7th Cir.1987). A "judgment on the merits" does not necessarily require a full trial of contested facts. A judgment by default, a judgment by stipulation or agreement, or on a motion for summary judgment is "on the merits" for purposes of res judicata. *In re Ross,* 81 B.R. 473, 475 (Bankr.N.D.Ill.1988); *Ruple v. Vermillion,* 714 F.2d 860, 862 (8th Cir. 1983), *cert. denied,* 465 U.S. 1029, 104 S.Ct. 1290, 79 L.Ed.2d 692 (1984). Res judicata applies if the dismissal of a suit was the result of a settlement or compromise between the parties. *In re L & S Industries, Inc.,* 122 B.R. 987, 993 (Bankr.N.D.Ill. 1991), *aff'd, Williams v. Stefan,* 133 B.R. 119 (N.D.Ill.1991).

The Court finds that the elements of res judicata have been met. It is essentially undisputed that the first and third elements of res judicata are satisfied: a final judgment on the merits was entered in the adversary proceeding by way of stipulation and agreement between the parties to the instant matter. The Court must determine whether the causes of action are identical. The Seventh Circuit refuses to allow a plaintiff to bring a second suit seeking a different remedy or form of relief than sought in a prior suit arising out of the same factual circumstances. *Energy Cooperative,* 814 F.2d at 1230 ("all claims arising from that transaction must be brought in one suit or [be] lost" (citation omitted)); *Diaz v. Indian Head, Inc.,* 686 F.2d 558, 562 (7th Cir.1982) ("[t]he issue, therefore, is whether the claim now raised arises out of the 'same basic factual situation' ... and could properly have been raised in the earlier suit" (citations omitted)).

The Trustee's objection to Bellwood's proof of claim and avoidance of its judgment, execution and other liens, could have been raised in the adversary proceeding. After all, the adversary proceeding was predicated upon section 547, which is the basis upon which the Trustee objects to

Bellwood's claim pursuant to section 502(d). Both causes of action arose from the same set of operative facts, namely Bellwood's obtaining and partially satisfying a judgment against the Debtor within the preference period. Res judicata bars claims that could have been raised. The Court holds that the section 502(d) objection should have been raised in the now settled adversary proceeding between the Trustee and Bellwood.

In light of the effective bar of section 546(a), which precludes the Trustee from pursuing another preference avoidance action, the Court need not address Bellwood's arguments and authorities concerning compulsory counterclaims pursuant to Federal Rule of Civil Procedure 13. Moreover, because the contested claim proceeds under Bankruptcy Rule 9014, and the Court has not directed Bankruptcy Rule 7013 to apply to this matter, those arguments and authorities are inapposite.

### G. Whether Mid American Has an Equitable Lien

■ As the parties concede, Mid American received two preferential transfers of cash payments ($230,000.00 and $75,000.00) totalling $305,000.00. Mid American obtained judgment liens on the remainder of the unpaid loan in the amount of approximately $1,200,000.00. The parties further concede that but for the Debtor's replacing $305,000.00 of the initial loan amount, Mid American would have sought and obtained judgment liens of $1,500,000.00. (Stipulation I, ¶ 14). Thus, Mid American concludes that if it does not prevail on the merits of the Preference Litigation, it should be entitled to an equitable lien of $305,000.00.

Mid American's argument fails for two reasons. First, as demonstrated above, Mid American's secured claim for $1,200,-000.00 is disallowed under section 502(d). Accordingly, no allowed secured claim exists upon which the equitable lien can arise. Second, there is no proper basis upon which this Court should impose an equitable lien in the amount of $305,000.00.

■ Generally speaking, the bankruptcy court looks to state law to determine the validity of an equitable lien, unless it would frustrate federally enacted policy. *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979); *Lewis v. Diethorn*, 893 F.2d 648, 650 (3d Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 369, 112 L.Ed.2d 332 (1990). An equitable lien is the right to have property subjected to the payment of a claim. *Chirekos v. Chirekos*, 33 Ill.App.3d 606, 609, 338 N.E.2d 140 (3d Dist.1975) (equitable lien is not just ad rem but is merely remedy for debt). It is neither a debt nor right of property, but a remedy for a debt. *Hargrove v. Gerill Corp.*, 124 Ill.App.3d 924, 930, 80 Ill.Dec. 243, 464 N.E.2d 1226 (2d Dist.1984).

■ The foundation of the equitable lien comes from the maxim that "equity regards as done that which ought to be done." *Lohmeyer v. Durbin*, 206 Ill. 574, 577, 69 N.E. 523 (1903). Equity also requires, however, that one seeking equitable relief cannot take advantage of his own wrong and such relief may be denied where the applicant is guilty of misconduct, fraud or bad faith. *Metcalf v. Altenritter*, 53 Ill.App.3d 904, 908, 12 Ill.Dec. 1, 369 N.E.2d 498 (5th Dist.1977).

■ Pointing to the nature of the lien and the Court's status as one of equity, Mid American contends that this Court must grant it an equitable lien in the amount of $305,000. Although the bankruptcy court is one of equity, it can not dissolve rights in the name of equity. *In re Lapiana*, 909 F.2d 221, 224 (7th Cir. 1990). The U.S. Supreme Court has counseled that "[w]hatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code." *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206, 108 S.Ct. 963, 969, 99 L.Ed.2d 169 (1988). Nor can it ignore the provisions of section 502(d). As so often stated, equity follows the law. *Stuewe v. Lauletta*, 93 Ill.App.3d 1029, 1032, 49 Ill.Dec. 494, 418 N.E.2d 138 (1st Dist.1981). Therefore, the Court will look to Illinois caselaw recognizing and enforcing an equitable lien and the Code's

impact on such lien in bankruptcy. Illinois appears to be the proper choice of law because the Debtor was an Illinois resident, because most of the property of the estate was located in Illinois and because these proceedings and the administration of the estate have been conducted in Illinois.

■ Illinois law recognizes and will enforce an equitable lien where there is an express executory agreement which sufficiently indicates an intention to make a particular property therein described a security for debt or which promises to convey or assign the property. *First Illinois Nat. Bank v. Hans,* 143 Ill.App.3d 1033, 1036, 98 Ill.Dec. 150, 493 N.E.2d 1171 (2d Dist. 1986). An express grant is not required to create such an equitable lien, it need only appear from the document that the parties intended that the property be held, given or transferred as security. *Id.* at 1036, 98 Ill.Dec. 150, 493 N.E.2d 1171; *Hibernian Banking Ass'n v. Davis,* 295 Ill. 537, 544, 129 N.E. 540 (1920). An equitable lien has also been recognized when it was promised orally rather than created by a written instrument, so long as the intent to pledge the property as security was apparent from the facts and circumstances. *Grigaitis v. Gaidauskis,* 214 Ill.App. 111, 117 (1st Dist. 1919).

■ An equitable lien generally has its basis in an express or implied agreement to make certain property security for a debt or other obligation. *Trustees of Zion Methodist Church v. Smith,* 335 Ill.App. 233, 236, 81 N.E.2d 649 (4th Dist.1948) (intent to pledge property as security for debt, lien will be recognized in equity); *Simpson v. Wrate,* 337 Ill. 520, 169 N.E. 324 (1929) (theory of equitable lien has its foundation in contract, express or implied). Thus, an express agreement evidencing an intent of the parties not to provide for an equitable lien will preclude a court from creating one by implication. *P.H. Broughton & Sons, Inc. v. Muller & Allen Realty Co.,* 40 Ill.App.3d 776, 353 N.E.2d 30 (4th Dist.1976); *Hamilton v. Downer,* 46 Ill. App. 541 (1892), *aff'd,* 152 Ill. 651, 38 N.E. 733 (1894) (a promise to pay out of the proceeds of any property gives no lien on the property).

■ The Illinois courts require three essential elements in granting an equitable lien: (1) a debt, duty or obligation owed by one party to another; (2) a *res* to which the obligation attaches, *In re Brass Kettle Restaurant, Inc.,* 790 F.2d 574, 575 (7th Cir. 1986); *W.E. Erickson Constr., Inc. v. Congress–Kenilworth Corp.,* 132 Ill.App.3d 260, 270, 87 Ill.Dec. 536, 477 N.E.2d 513 (1st Dist.1985), *aff'd,* 115 Ill.2d 119, 104 Ill.Dec. 676, 503 N.E.2d 233 (1986); *Jacobsen v. Conlon,* 14 Ill.App.3d 306, 308, 302 N.E.2d 471 (1st Dist.1973); and (3) an intent to secure payment of the obligation via the *res. E.g. Brass Kettle,* 790 F.2d at 575; *see* 51 Am.Jur.2d, *Liens,* § 24 at 162–164 (1970 and 1991 Supp.).[3] Once an equitable

---

3. Illinois courts addressing the issue of equitable liens look for an intent to secure payment of an obligation with certain property. *See Hibernian Banking Ass'n v. Davis,* 295 Ill. 537, 544–45, 129 N.E. 540 (1920) (equitable assignment arises upon actual appropriation of fund, and not mere promise to pay out a fund when collected); *Lohmeyer v. Durbin,* 206 Ill. 574, 69 N.E. 523 (1903) (agreement to execute a mortgage to secure payment of a purchase money creates an equitable mortgage); *First Illinois Nat. Bank v. Hans,* 143 Ill.App.3d 1033, 1036, 98 Ill.Dec. 150, 493 N.E.2d 1171 (2d Dist.1986) (assignments intended to serve as security for loan created an equitable mortgage); *Melrose Park Nat. Bank v. Melrose Park Nat. Bank,* 123 Ill. App.3d 282, 286, 78 Ill.Dec. 622, 462 N.E.2d 741 (1st Dist.1984) (if a deed of real estate is intended as security for a loan, it will be held to be an equitable mortgage); *Beelman v. Beelman,* 121 Ill.App.3d 684, 690, 77 Ill.Dec. 196, 460 N.E.2d 55 (5th Dist.1984) (when a deed is intended to be a mortgage, the relationship created between the parties is that of equitable mortgagor and mortgagee); *Metcalf v. Altenritter,* 53 Ill.App.3d 904, 909, 12 Ill.Dec. 1, 369 N.E.2d 498 (5th Dist.1977) (a conveyance of land, seemingly absolute, will be treated as a mortgage if it were intended as security for the payment of money); *National Bank of Albany Park v. Newberg,* 7 Ill.App.3d 859, 866, 289 N.E.2d 197 (1st Dist. 1972) (an equitable assignment requires an actual or constructive appropriation of the subject matter as to confer a complete and present right on the assignee with the assignor retaining no control, authority to collect, or power of revocation over the assigned subject matter); *Marbach v. Gnadl,* 73 Ill.App.2d 303, 314–315, 219 N.E.2d 572 (1st Dist.1966) (if a mortgage indicates an intent the property shall be insured by the mortgagor for the security of the mortgagee, and the mortgagor takes out a policy covering the mort-

lien is declared, it relates back to the time the circumstances occurred which created it. *Marbach*, 73 Ill.App.2d at 315, 219 N.E.2d 572; *see In re Einoder*, 55 B.R. 319, 327 n. 29 (Bankr.N.D.Ill.1985).

Mid American argues that it has satisfied the elements of an equitable lien. Pointing to the $1,500,000.00 loan, Mid American contends a debt exists. The *res* to which the lien attaches, according to Mid American, is the $305,000.00 preferential payment. Thus, Mid American asserts that because it accepted the $305,000.00 in preferences, it did not secure a judgment in the full amount owed which it could and would have done and should be determined to hold an equitable lien on the lesser sums it was able to collect. This is sophistry at a rarefied height which the court rejects.

█ Mid American's argument would have this Court focus on the requirements of a debt and *res* while ignoring the third element of intent and the clear Congressional policy disfavoring preferences made and received on the eve of bankruptcy. To effectuate a security arrangement involving specific property, specific parties and a specific obligation, the parties' intent must appear in the express language of the transfer documents or the surrounding circumstances. *Hibernian Banking Association v. Davis*, 295 Ill. 537, 543, 129 N.E. 540 (1920). The district court underscored the importance of the element of intent in *United States v. Canellis*, 490 F.Supp. 1125 (N.D.Ill.1980). Regarding equitable mortgages, the *Canellis* court stated: "Illinois courts recognize equitable mortgages in a variety of land transfer transactions. The basic requirement is that the intent to effect a security arrangement involving the particular property and the parties appear from the express language of the transfer documents or from the surrounding circumstances." *Id.* at 1129.

The record shows that the Debtor owed $1,500,000.00 which became completely unsecured when Mid American modified its Loan Agreement with the Debtor and re-

leased the funds which he borrowed, but failed to repay as agreed. The evidence is devoid of any written expression of the parties' intent to make specific property security for the $1,500,000.00 loan. *See Brass Kettle*, 790 F.2d at 575. Moreover, nothing submitted to this Court identifies any *res* which the Debtor pledged as specific property to pay this debt. *Id.* Mid American contends that the Debtor's payments of $305,000.00 shows his intent to pay the debt, but this argument misses the mark. An essential element of an equitable lien is a specific intent to secure payment of a debt by virtue of an identified *res*, which equity will recognize. In this proceeding, the Debtor surely intended to pay his debt to Mid American, but not from an identified *res* as much as from any proceeds he could locate. The Debtor, for example, tendered a personal check which was unfunded. He then caused two transfers to be made from two different sources which totalled only $350,000.00, well short of the $1,500,000.00 borrowed. The Debtor's intent to satisfy his debt to Mid American from a particular *res*, or lack thereof, is underscored by the unsecured status of the $1,500,000.00 loan. Upon Mid American's own volition, it released $1,500,000.00 unsecured to the Debtor. For Mid American to now claim the Debtor intended to repay the unsecured debt sufficient to create an equitable lien is self-serving, and falls far short of the type of intent envisioned by the courts as creating an equitable lien. Rather, the Debtor's conduct, at best, shows an intent to prefer a certain creditor over others which is the basis for disallowing such transfers. Allowing Mid American to now claim an equitable lien would encourage all recipients of preferential transfers to claim equitable liens, thereby circumventing two of the purposes of the trustee's avoiding powers, namely, to foster an equal pro rata distribution of the estate to creditors of the same priority and avoid the rush to the courthouse to financially dismember the ailing debtor. H.R.Rep. No. 595, 95th Cong., 1st Sess.

gaged premises, the mortgagee will be entitled to the proceeds on an equitable lien theory); *Grigaitis v. Gaidauskis,* 214 Ill.App. 111, 117 (1st

Dist.1919) (court of equity looks to intent and purpose concerning an equitable lien).

177–178 (1977), *reprinted in* U.S.Code Cong. & Admin.News 1978, pp. 6137, 6138.

Additionally, the present proceeding is in stark contrast to the cases recognizing an equitable lien under Illinois law. Illinois courts have recognized and enforced equitable liens in two types of fact situations. *Brass Kettle,* 790 F.2d at 575. The first situation involves an express writing of the parties' intent to make particular property, real or personal, the security for a debt. *Id.* Many times this involves a deed which on its face appears to be an absolute conveyance of a particular piece of real estate. *In re Cutty's–Gurnee, Inc.,* 133 B.R. 934, 945 (Bankr.N.D.Ill.1991), *aff'd,* No. 91 C 6179, 1991 WL 277595, slip op. (N.D.Ill. Dec. 18, 1991). The equitable lien doctrine is applied to treat the deed as a mortgage rather than a transfer of title when it appears that the parties intended such deed to serve only as security for a specific debt. *See e.g. Beelman v. Beelman,* 121 Ill. App.3d 684, 460 N.E.2d 55 (5th Dist.1984). The second situation arises when there is an unfulfilled promise to grant a lien against an interest in particular property, real or personal. *Brass Kettle,* 790 F.2d at 575; *Cutty's–Gurnee,* 133 B.R. at 945.

Neither situation exists here. Mid American obtained a judgment for $1,200,000.00 which it later perfected by means of judgment liens against the Debtor's property in two Illinois counties and a Wisconsin county. All was done without his consent. The only cooperation from the Debtor was his two preferential transfers totalling $305,-000.00 paid prior to the commencement by Mid American of the litigation in Ohio against him. The facts in the present proceeding fail to fall within those envisioned by the Illinois federal courts for the imposition of an equitable lien.

■ The Bankruptcy Code seeks to treat all creditors of the same class equally. *In re ZZZZ Best Co.,* — U.S. —, 112 S.Ct. 527, 553, 116 L.Ed.2d 514 (1991). To that end, transfers by a debtor that are preferences or fraudulent conveyances are recoverable by the trustee for distribution to the creditors, along with other assets of the estate. *Id.* Granting an equitable lien thwarts this policy by elevating an otherwise unsecured creditor's status to that of a secured creditor. Courts from this Circuit have expressed disfavor with granting equitable liens. *Small v. Beverly Bank,* 936 F.2d 945, 949 (7th Cir.1991) (equitable liens have long been the object of scorn in bankruptcy); *In re Joliet–Will County Community Action Agency,* 847 F.2d 430, 433 (7th Cir.1988) (equitable lien is an unperfected security interest which the trustee in bankruptcy can set aside); *In re T. Brady Mechanical Services, Inc.,* 129 B.R. 559, 563 (Bankr.N.D.Ill.1991) (not equitable to take money that would otherwise benefit unsecured creditors); *In re Hendleman,* 91 B.R. 475, 476 (Bankr.N.D.Ill.1988) (equitable liens are treated with disfavor under bankruptcy law). The *Einoder* court remarked:

> Under the old Bankruptcy Act § 60(a)(6) (11 U.S.C. § 96(a)(6)), equitable liens were "declared to be contrary to the policy" of bankruptcy law. A creditor who had failed to take all the steps required to perfect a lien should not be allowed to fall back on an assertion of an equitable lien to frustrate the Bankruptcy Code policy of recognizing only perfected interests in property. (footnote omitted)

*Einoder,* 55 B.R. at 328. Contrary to Mid American's arguments attempting to distinguish *Einoder,* the facts remain that the payments it received from the Debtor, and its action to obtain a judgment and enforce same with judgment liens, all occurred during the preference period.

Whether Mid American could and would have perfected a judgment lien in the larger amount of $1,500,000.00 carries no weight. It received preferential transfers plain and simple. There is nothing unfair or unjust in disallowing, as secured, a claim that was not so perfected pre-bankruptcy as to be unavoidable. Mid American attempts to frustrate the policy of equitable distribution by seeking to have this Court put its otherwise voidable judgment liens on the same parity with secured lienholders whose liens were at all times unavoidable. Mid American's request for an equitable

lien in the amount of $305,000.00 is hereby denied. Mid American's unreleased judgment liens will not be partially satisfied by an additional dividend check from the Trustee.

## IV. CONCLUSION

For the foregoing reasons, the Court hereby finds that Bellwood has failed to meet its burden of proof with respect to its alleged secured claim against the estate. Consequently, Bellwood's secured claim is disallowed for failure to furnish the requisite documentation. The Trustee's objections, therefore, are sustained in part. Moreover, Mid American's secured claim is hereby disallowed and its request for an equitable lien is denied. The Court holds that the Trustee was not time barred by section 546(a) from making his objections under section 502(d). By same, the Trustee was not seeking to avoid the various liens and improperly circumvent the limitations period prescribed by section 546(a). Rather, the Trustee properly sought not to make dividend payments out of the estate to holders of claims who had received preferential transfers and not surrendered or disgorged same, thereby entitling them to share pro rata along with unsecured creditors in the bankruptcy estate. These creditors holding preferences that were not avoided for whatever reason, may continue to hold their liens, but they are not entitled to do so and receive a dividend from the estate at the expense of the unsecured creditors.

This Opinion is to serve as findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

See written Order.

## ORDER

For reasons set forth in a Memorandum Opinion dated the 28th day of February, 1992, the Court hereby sustains in part the Trustee's objection to the secured claim of The Bank of Bellwood. The Bank of Bellwood's secured claim is disallowed for failure to support same as required by Federal Rule of Bankruptcy Procedure 3001(c) and

(d). The Bank of Bellwood's motion for judgment on the pleadings is denied and its demand for a jury trial stricken. Additionally, the Court hereby sustains the Trustee's objection to the secured claim of Mid American National Bank and Trust Company and denies its request for an equitable lien. The principal holding of the Court is that the statute of limitations prescribed in 11 U.S.C. § 546(a) does not apply to claims objections based on 11 U.S.C. § 502(d).

## ON MOTIONS FOR ALTERNATIVE RELIEF AND FOR LIMITED RECONSIDERATION

### MEMORANDUM OPINION

These matters come before the Court on the motion of The Bank of Bellwood ("Bellwood") for alternative relief pursuant to 11 U.S.C. § 502(j) and Federal Rules of Bankruptcy Procedure 3003, 3008, 9006, 9023, and 9024, and on the motion of Thomas E. Raleigh, trustee of the Debtor's estate (the "Trustee") for limited reconsideration pursuant to Bankruptcy Rules 3008 and 9023, of the Court's Memorandum Opinion and Order dated February 28, 1992. For the reasons set forth herein, the Court hereby denies both motions.

## I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain these motions pursuant to 28 U.S.C. § 1334 and General Rule 2.33(A) of the United States District Court for the Northern District of Illinois. These matters constitute core proceedings under 28 U.S.C. § 157(b)(2)(A), (B) and (O).

## II. FACTS AND BACKGROUND

### A. *Bellwood's Motion*

Bellwood filed its motion on March 11, 1992. Bellwood seeks relief in the alternative, first asking the Court to reconsider and amend the Opinion and Order denying Bellwood's secured claim on the grounds that Bellwood failed to provide documentation of its liens. Second, Bellwood seeks to reopen the judgment and allow it to introduce into evidence the documents upon

which its liens are founded. Last, Bellwood seeks to supplement or amend its proof of claim with the subject documents and asks the Court to reconsider allowance of its claim. The Trustee opposes the relief requested by Bellwood contending that there was no manifest error of law or fact which warrants the relief requested. Moreover, the Trustee denies that he stipulated to allowance of Bellwood's claim as secured, pointing to the lengthy objection filed.

### B. *The Trustee's Motion*

The Trustee filed the instant motion for limited reconsideration on March 10, 1992. In particular, the Trustee asks the Court to reconsider subsection F of the Opinion whereby the Court found that by entering into a Settlement Agreement, "the parties intended to extinguish all of the Trustee's objections to the claim of Bellwood, including the Trustee's objection in the instant matter." Memorandum Opinion at pp. 139–40. In addition, the Trustee takes exception to the Court's finding that he was barred from objecting to Bellwood's proof of claim under the doctrine of res judicata. The Trustee asserts that these two findings are erroneous and conflict with the plain language of the Settlement Agreement, the intention of the parties and established principles of res judicata. Bellwood asserts that the Trustee has failed to point to any manifest error of law or fact or present any newly discovered evidence. In addition, Bellwood contends that the motion revisits arguments already addressed and decided by the Court.

### III. APPLICABLE STANDARDS

"Motions to reconsider" are not formally designated by either the Federal Rules of Bankruptcy Procedure or Federal Rules of Civil Procedure, except as provided in Bankruptcy Rule 3008 which allows reconsideration of orders allowing or disallowing claims against the estate. Rule 59(e) of the Federal Rules of Civil Procedure, as adopted by Bankruptcy Rule 9023, permits a party to move the court to alter or amend a judgment entered by filing a motion to alter or amend, not styled as a motion to reconsider.

The Seventh Circuit Court of Appeals has instructed courts to treat all substantive post-judgment motions filed within ten days of judgment under Rule 59. *Charles v. Daley,* 799 F.2d 343 (7th Cir. 1986). Motions made thereafter are considered under the provisions of Rule 60 of the Federal Rules of Civil Procedure, as adopted by Bankruptcy Rule 9024. Because both motions at bar were filed within ten days of the judgment, the procedural standards and authorities construing Rules 59 and 9023 control rather than the inapposite authorities pursuant to Rules 60 and 9024.

Motions made under Rule 59 serve to correct manifest errors of law or fact, or to consider the import of newly discovered evidence. *Publishers Resource, Inc. v. Walker–Davis Publications, Inc.,* 762 F.2d 557 (7th Cir.1985); *Keene Corp. v. International Fidelity Ins. Co.,* 561 F.Supp. 656 (N.D.Ill.1982), *aff'd,* 736 F.2d 388 (7th Cir. 1984); *F/H Industries, Inc. v. National Union Fire Ins. Co.,* 116 F.R.D. 224, 226 (N.D.Ill.1987). The function of a motion made pursuant to Rule 59(e) is not to serve as a vehicle to relitigate old matters or present the case under a new legal theory. *Federal Deposit Ins. Corp. v. Meyer,* 781 F.2d 1260, 1268 (7th Cir.1986); *Evans, Inc. v. Tiffany & Co.,* 416 F.Supp. 224, 244 (N.D.Ill.1976); *In re BNT Terminals, Inc.,* 125 B.R. 963, 976–977 (Bankr.N.D.Ill.1990). The purpose of a motion to alter or amend "is not to give the moving party another 'bite at the apple' by permitting the arguing of issues and procedures that could and should have been raised prior to judgment." *BNT Terminals* at 977. "A motion brought under Rule 59(e) is not a procedural folly to be filed by a losing party who simply disagrees with the decision; otherwise, the Court would be inundated with motions from dissatisfied litigants." *Id.*

Bellwood also seeks relief under section 502(j) and Bankruptcy Rule 3008. Section 502(j) provides in relevant part that "[a] claim that has been allowed or disallowed

may be reconsidered for cause. A reconsidered claim may be allowed or disallowed according to the equities of the case." 11 U.S.C. § 502(j). Bankruptcy Rule 3008, in turn, provides that "[a] party in interest may move for reconsideration of an order allowing or disallowing a claim against the estate. The court after a hearing on notice shall enter an appropriate order." Fed. R.Bankr.P. 3008.

## IV. DISCUSSION

### A. *Bellwood's Motion*

Bellwood raises several arguments in its motion. First, Bellwood contends the sufficiency of its documentation was not at issue and the Trustee had stipulated to the validity of Bellwood's secured claim. Bellwood states that the Trustee did not file a written objection to its claim pursuant to Bankruptcy Rule 3007. The Trustee counters this argument by pointing to its lengthy objection filed which thereby shifts the burden of proof to Bellwood.

The Bankruptcy Rules were promulgated by the Supreme Court of the United States and were prescribed to govern the practice and procedure in cases under Title 11 of the United States Code. These rules are not to be ignored. Rather, certain of the rules are mandatory, not merely directory, and the Court is bound to apply these rules to all cases pending before it whether or not a party in interest invokes them. The Bankruptcy Rules as a whole are procedural, not jurisdictional in nature. *Bostick Foundry Co. v. Lindberg, Div. of Sola Basic Industries, Inc.,* 797 F.2d 280, 283 (6th Cir.1986), *cert. denied,* 479 U.S. 1066, 107 S.Ct. 953, 93 L.Ed.2d 1002 (1987).

Bankruptcy Rule 3001 is both mandatory and crystal clear. In order for a proof of claim to constitute prima facie evidence of its validity and amount, a creditor must furnish the requisite documentary evidence necessary to support the claim as secured. *See* Fed.R.Bankr.P. 3001(c), (d) and (f). Bellwood, as the claimant, bears the burden of establishing a valid claim. Bellwood's filed proof of claim did not meet such burden under the Rule. No documentation was presented to the Court which would have enabled the Court to determine that Bellwood possessed a valid claim secured by specific items of collateral. Hence, the Court was compelled to find that such proof of claim failed to establish that Bellwood possessed a claim secured against all or some of the estate's assets or proceeds thereof in the Trustee's possession. Bellwood's reliance on the Court's decision *In re Candy Braz, Inc.,* 98 B.R. 375 (Bankr.N.D.Ill.1988) is misplaced. That case did not involve the requirements of Bankruptcy Rule 3001 for secured claims. Instead, it involved a pretrial amendment to an unsecured tax claim.

■ As the Trustee aptly notes, filing documentation evidencing perfection of a security interest or judgment lien with the proof of claim is a "condition precedent" to allowance of a claim as secured. Without such documentation, the holder does not establish a prima facie claim. *See In re Lindell Drop Forge Co.,* 111 B.R. 137, 142 (Bankr.W.D.Mich.1990); *In re All–American Auxiliary Asso.,* 95 B.R. 540, 545 (Bankr.S.D.Ohio 1989). Bellwood's reliance on *In re White,* 908 F.2d 691 (11th Cir. 1990) is misplaced. There the court held that the bankruptcy court's sua sponte ruling on a creditor's claim in the absence of an objection thereto ignored Bankruptcy Rule 3007. One significant difference between the *White* case and the matter at bar is that the Trustee filed a rather lengthy objection to Bellwood's claim disputing the proper allowance thereof as secured. Accordingly, the *White* case is inapposite, and further did not involve or discuss the requirements of Bankruptcy Rule 3001 for secured claims.

■ Additionally, Bellwood's argument that the parties dispositively stipulated to the validity of Bellwood's secured claim is rejected. Because the requirements of Bankruptcy Rule 3001 are mandatory, parties may not stipulate to excuse compliance with same. The lack of documentation filed with the proof of claim precluded the Court from determining if the asserted judgment, execution and citation liens were valid or to what assets they attached. The

Court has a duty to apply mandatory Bankruptcy Rules regardless of whether the parties purportedly stipulate to circumvent those Rules.

Moreover, the Trustee filed a comprehensive objection to Bellwood's claim without conceding its claimed perfection of any security interests or liens. Same effectively undercuts Bellwood's contention that the Trustee effectively stipulated to allowance of the claim as secured. The fact that the Debtor owed Bellwood the unrepaid loan which it reduced to a valid Illinois state court judgment, which Bellwood attempted to secure with judicial and other liens, does not mean ipso facto that Bellwood automatically holds an unavoidable secured claim which must be allowed by a bankruptcy court. That the Trustee may have stipulated to the validity of Bellwood's state court judgment is not the same as stipulating to an allowable secured claim for purposes of the Bankruptcy Code and Rules.

Next, Bellwood argues that its timely filed proof of claim states on its face that the subject documents were provided to the Trustee. Bellwood concludes that when these documents are considered together with all the other papers filed with the Trustee and the Court over the course of three years, there is ample evidence that Bellwood possessed a secured claim. The two documents filed with the Court that Bellwood references are portions of the "List of Properties," Bellwood's "Disclosure Statement for Plan of Reorganization" attached as Exhibits F and G to its motion, and the "Schedule A–2—Creditors Holding Security." These documents, however, fail to provide the requisite evidence called for by Bankruptcy Rule 3001 which shows that Bellwood possessed a valid security interest, or that same was perfected in any items of property, nor do they, as

Bellwood argues, prove the validity of Bellwood's liens.

Bellwood cites to Bankruptcy Rule 5005(b)[1] for the proposition that it is within the Court's discretion to deem the subject documents that were delivered to the Trustee to be filed as part of its proof of claim as of the date the proof of claim was originally filed. Moreover, Bellwood distinguishes *In re Evanston Motor Co.*, 735 F.2d 1029 (7th Cir.1984) on the basis that it properly filed its proof of claim which specifically referenced the supporting documents delivered to the Trustee, thereby expressing its intent that those documents be considered a part of its proof of claim. *Evanston Motor*, which construed Bankruptcy Rule 509(c), predecessor to Bankruptcy Rule 5005, held that the Rule applies only when the proof of claim is misdelivered. *Id.* at 1032. The flaw in Bellwood's argument on this point lies in the fact that it has not alleged that any documents were erroneously delivered to the Trustee or any other party in interest. In fact, the proof of claim demonstrates that Bellwood had no apparent intention of filing any other supporting documents with the Court because the proof of claim stated that "all documents in claimant's possession that pertain to these liens have been provided to the trustee in the above-captioned case." Thus, its reliance on Bankruptcy Rule 5005 is misplaced. The Court finds that *Evanston Motor* is controlling and will not reconsider that holding as Bellwood has suggested.

In addition, Bellwood argues that it could not have reasonably foreseen the need to present its documentation. Bellwood contends that if its liens were not valid and subsisting, it would have been logically impossible for the Trustee to assert a prima facie objection to the claim under 11 U.S.C. § 502(d) without at the same time estab-

---

**1.** Bellwood cites to subsection (b) of Bankruptcy Rule 5005 which was amended in 1991, thereby making the relevant text subsection (c), which provides in pertinent part:

A paper intended to be filed with the clerk but erroneously delivered to the United States trustee, the trustee, the attorney for the trustee, a bankruptcy judge, a district judge, or the

clerk of the district court shall, after the date of its receipt has been noted thereon, be transmitted forthwith to the clerk of the bankruptcy court.... In the interest of justice, the court may order that a paper erroneously delivered shall be deemed filed with the clerk or transmitted to the United States trustee as of the date of its original delivery.

lishing the validity of the liens. The Court finds this argument disingenuous. The requirements of Bankruptcy Rule 3001 placed Bellwood on notice of precisely what documents needed to accompany the form proof of claim for its deemed allowance as secured, whether or not the Trustee interposed an objection. Bellwood's failure to comply with the Rule, whether through oversight or ignorance, dictated the resultant disallowance.

■ Next, Bellwood requests that the Court reopen the judgment and hearing, allowing it to introduce evidence regarding the documentation (now supplied with its motion) upon which its liens are founded. Bellwood enumerates several reasons why the Court should allow it to now introduce evidence: (1) Bellwood could not have reasonably foreseen any need to present the subject documents; (2) that portion of the Opinion concerning Bankruptcy Rule 3001 took Bellwood by surprise; and (3) no party in interest will be prejudiced. The Court will not afford Bellwood another opportunity to introduce its late proffered evidence. The Court previously afforded Bellwood the opportunity to have a full evidentiary hearing on its contested proof of claim. Bellwood declined and rested on the pleadings filed. Unfortunately, at and prior to trial, Bellwood failed to submit its documentation which at all times prior to trial was available. Bellwood had an opportunity to have its day in court and waived same. None of such evidence is newly discovered, and consequently Bellwood is barred from another evidentiary hearing.

■ The Court does not agree that Bellwood could not have reasonably foreseen the need to present the subject documents, and thus was surprised by the Court's Opinion. All parties are assumed to have knowledge of the Bankruptcy Rules. Neither ignorance of nor failure to comply with the requirements contained in Bankruptcy Rule 3001 constitutes sufficient reasons for the Court to reopen the judgment and allow Bellwood another chance to present such evidence. The Court wholly disagrees that no party in interest will be prejudiced if the Court allows Bellwood's

requested relief. If the Court allows Bellwood to introduce its documents, and finds that Bellwood has a valid secured claim in the amount of $750,000.00, then the unsecured creditors will be prejudiced to that extent by the reduced dividends they will receive on their claims. As a consequence, the Court will not allow this avenue of relief.

■ Bellwood next seeks to supplement or amend its proof of claim with the documents attached to its motion, and asks the Court to reconsider the allowance of its claim pursuant to Bankruptcy Rule 3008 and section 502(j). Bellwood asserts several bases for the allowance of an amendment: (1) the amendment is technical and ministerial; (2) all parties have been given notice of Bellwood's claim; (3) Bellwood has been diligent; and (4) it would be inequitable to deny Bellwood's claim on grounds of "technical error." The Court rejects this line of argument. The Court's disallowance of Bellwood's claim as secured was not ministerial or done on the grounds of a "technical error." Compliance with applicable Bankruptcy Rules is more than a mere technicality. Although notice has been given, Bellwood's diligence in adequately documenting its proof of claim comes after trial and too late. This is not sufficient cause under section 502(j). Moreover, the equities on this matter lay with the unsecured creditors, not Bellwood. The Court finds that Bellwood has failed to demonstrate any manifest errors made in law or fact. None of the voluminous exhibits attached to the motion constitutes newly discovered evidence. Thus, the Court will not reconsider its disallowance of Bellwood's claim.

Moreover, as the Trustee aptly notes, the Court will not allow Bellwood to amend its proof of claim because there is no pending proof of claim for it to amend. *See In re White Motor Corp.*, 65 B.R. 383, 391 (N.D.Ohio 1986), *modified on other grounds, Reid v. White Motor Corp.*, 886 F.2d 1462 (6th Cir.1989), *cert. denied*, 494 U.S. 1080, 110 S.Ct. 1809, 108 L.Ed.2d 939 (1990). The litany of cases cited by Bellwood are distinguishable because they in-

volved motions to amend pending proofs of claim, distinct from the motion at bar involving reconsideration of a claim disallowed as secured under Bankruptcy Rule 3001.

■ Finally, Bellwood requests that the various papers filed with the Court and the Trustee be treated as an informal proof of claim. Under some circumstances, actions by a claimant which do not amount to a formal proof of claim may constitute an informal proof of claim. *See In re Charter Co.*, 876 F.2d 861, 863 (11th Cir.1989); *In re Anderson–Walker Industries, Inc.*, 798 F.2d 1285, 1287 (9th Cir.1986). The fatal flaw in Bellwood's assertion of this doctrine, however, is that it filed a formal proof of claim, but failed to support same with the requisite documentation. Bellwood cannot now employ this doctrine to end-run and effectively eviscerate the requirements set forth in Bankruptcy Rule 3001(f). Those authorities allowing informal proofs of claim are inapposite.

### B. *The Trustee's Motion*

■ In addition, the Trustee's motion must also be denied as it fails to establish any manifest errors of law or fact, or present newly discovered evidence. The Trustee contends that the Court erred in holding that the Settlement Agreement entered into between the Trustee and Bellwood extinguished all of the Trustee's objections to the claim of Bellwood, including the section 502(d) objection. The Court held that the Settlement Agreement was governed by contract principles. The Court found that the use of the broad language contained therein as discussed in the Memorandum Opinion at pages 124 and 139–40, extinguished all of the Trustee's objections, including the section 502(d) objection to Bellwood's proof of claim.

In support of his argument, the Trustee cites the preamble to the Settlement Agreement which specifically refers only to the adversary proceeding and recites that "the Parties to this Agreement now wish to settle the Adversary Proceeding." In addition, the Trustee directs the Court to para-graph four of the Settlement Agreement. That portion of the Settlement Agreement, however, pertains to Bellwood's release of the Debtor's estate and the Trustee, not the release of Bellwood by the Trustee. Paragraph three of the Settlement Agreement, on the other hand, discusses and contains the terms of the Trustee's release of Bellwood. It specifically provides that the Trustee releases Bellwood "from any and all claims, demands, or causes of action of any kind whatsoever ... including without limitation of the generality of the foregoing, all claims ... that ... *could have been asserted* in the Adversary Proceeding." (emphasis added). The Trustee concludes that these portions of the Settlement Agreement, read in conjunction with the balance of the document, establishes that it was not the intention of the parties to release the Trustee's section 502(d) objection to Bellwood's claim.

The Court need not look beyond the four corners of the Settlement Agreement when it is unambiguous. The scope of the broad language of the Settlement Agreement encompassed the Trustee's section 502(d) objection to Bellwood's claim. The Court is unable to ignore the broad release language contained in paragraph three of the Settlement Agreement to which the Trustee expressly agreed without exception for or reservation of the section 502(d) claim objection. The Trustee cannot now convincingly argue that he never intended for the language of the Settlement Agreement to be so all-inclusive. Moreover, paragraph seven of the Settlement Agreement prohibits the introduction of oral or extrinsic evidence concerning the terms or conditions of the Settlement Agreement that are not included or referred to therein and not reflected in writing. Furthermore, no such extrinsic evidence has been proffered by the Trustee. The Court construes the Trustee's motion as an attempt to shift the responsibility for a possible error in drafting to the Court. Neither equity nor this Court will aid such an endeavor. Both parties were represented by able and very experienced counsel and must be held to the plain language contained in the Settlement Agreement. If paragraph three in

**152**

fact contained an error or omission in drafting or proofreading, the Court cannot properly relieve the Trustee from such a unilateral mistake, especially when Bellwood asserts that there was no mutual mistake of fact.

 Additionally, the Trustee contends that to construe the Settlement Agreement as the Court has ruled would mean that the Trustee intentionally allowed Bellwood to keep an invalid $750,000.00 secured claim in exchange for an $11,333.00 payment to the Debtor's estate. The Trustee contends that this is an unreasonable construction of the Settlement Agreement. The Court rejects this illogical argument. It assumes Bellwood's claim is invalid, when in fact and in law the claim has been found to be inadequate to be allowed as secured. This is not the equivalent of an invalid proof of claim. Bellwood's claim will simply not be paid as a secured claim.

The Court was not privy or party to the negotiations that took place between the Trustee and Bellwood when it approved the Settlement Agreement pursuant to Bankruptcy Rule 9019. Both parties were represented by able counsel who drafted the terms and conditions of the Settlement Agreement, not the Court. There were no objections filed to the Settlement Agreement by any creditor or other party in interest. Moreover, the $11,333.00 settlement payment was certainly within the range of litigation possibilities and was a cash benefit to the estate. As such, the Court approved the negotiated settlement as in the best interest of the estate. *See In re American Reserve Corp.*, 841 F.2d 159, 161 (7th Cir.1987); *In re Del Grosso*, 106 B.R. 165, 167 (Bankr.N.D.Ill.1989).

Moreover, the fallacy in the Trustee's contention is that he intentionally allowed Bellwood to keep a $750,000.00 preferential transfer. It is dubious that the Trustee, an experienced, capable lawyer well represented by other experienced lawyers, intentionally allowed Bellwood to keep the liens. The more likely and probable scenario is that the drafters of the Settlement Agreement erred in including such broad language in paragraph three, without expressly reserving or excepting out the claim objection. The Court, however, cannot base its rulings and determinations upon scrivener's errors or omissions not patently obvious from the plain language used in the Settlement Agreement.

The Trustee cites several cases for the proposition that contracts are to be construed reasonably to avoid absurd results and to give effect to the intentions of the parties. The Court finds that the plain language used in the Settlement Agreement is clear and unambiguous and not susceptible of two constructions as the Trustee would have this Court believe. The Trustee, unfortunately, included such broad language in paragraph three of the Settlement Agreement. Consequently, he must now be held to the language he chose and the Court will not relieve him of that decision.

The Trustee reargues the point of whether the section 502(d) objection to Bellwood's proof of claim constitutes a "claim" or a "defense." The Trustee merely revisits the same arguments which the Court has already addressed in its Opinion and will not further discuss here. The Trustee had his one "bite at the apple" and is not entitled to another.

 Next, the Trustee contends that the Court erred in finding that the section 502(d) objection to Bellwood's claim was barred by the dismissal of the adversary proceeding under the principle of res judicata. The Trustee argues that separate sets of preferential transfers were at issue in the adversary proceeding and the Trustee's section 502(d) objection to Bellwood's claim. The Trustee maintains that the adversary proceeding only involved interest payments made by the Debtor on the unsecured loan from Bellwood. Those payments were made on the note prior to entry of a judgment and prior to Bellwood's attempts to secure its judgment with judicial liens. The Trustee further asserts that the section 502(d) objection is conversely based upon separate transfers of interests in different property which Bellwood received by virtue of the liens it obtained as security for its judgment. The Trustee concludes

that the two transfers represent separate and independent preferential transfers, and thus the section 502(d) objection could not have been raised in the adversary proceeding which pertained to a section 547 transfer.

In support of his position, the Trustee cites *In re Robertson*, 105 B.R. 440 (Bankr. N.D.Ill.1989) and *In re Energy Cooperative, Inc.*, 814 F.2d 1226 (7th Cir.1987), *cert. denied*, 484 U.S. 928, 108 S.Ct. 294, 98 L.Ed.2d 254 (1987). The Court rejects this argument and finds *Robertson* easily distinguishable on its facts. The court in *Robertson* stated that the two actions "involve different agreements, different parties, different transactions, different laws, different defenses, different facts and different points in time." *Id.* at 454. Likewise distinguishable, *Energy Cooperative* involved an action by the debtor to recover an alleged voidable preference under section 547(b). The court held that that suit was barred by res judicata because it involved the same cause of action as a prior suit to determine an account balance between the debtor and an oil company. Thus, *Energy Cooperative* lends no support to the Trustee's position.

The Court holds that the Trustee's objection to Bellwood's claim and avoidance of its judgment, execution and citation liens could have been raised in the adversary proceeding which was predicated upon section 547 to avoid and recover the cash payment made to Bellwood pre-petition, which is the underlying basis for the objection to Bellwood's claim pursuant to section 502(d). Both causes of action arose from the same related set of operative facts, namely Bellwood's receipt of cash payments from the Debtor on its unpaid loan and obtaining and partially satisfying a judgment against the Debtor for the balance of the loan. The transactions and conveyances all relate to the same loan between the Debtor and Bellwood. The property interests conveyed were made in favor of Bellwood from the Debtor's pre-petition property. The voluntary interest payments were made by the Debtor, earlier than the involuntary liens obtained by Bellwood and against the Debtor's property

post-judgment, but all of same occurred within the statutory preference period.

The Court disagrees with the Trustee's characterization as immaterial that the adversary proceeding and the Trustee's claim objection both involve avoidance of different preferential transfers under section 547. The Court also disagrees with the Trustee's assertion that these were completely separate sets of preferential transfers at issue in the adversary and the objection. Rather, they were related and arose from the same core of operative facts and could have been raised in the same adversary proceeding to avoid and recover all preferential transfers to Bellwood, the post-judgment liens, as well as the pre-judgment interest payments.

The Trustee's argument that the section 502(d) objection could not have been raised in the adversary proceeding because he sought no affirmative relief against Bellwood is rejected. For purposes of res judicata, it is irrelevant whether the claim objection was brought in the adversary proceeding; the relevant query is whether the Trustee could have asserted the claim objection in the adversary proceeding. The Court finds that the Trustee could have asserted the section 502(d) objection to Bellwood's proof of claim in the adversary proceeding because he sought and received affirmative relief against Bellwood. The parties to the adversary proceeding and claim objection are identical; the settlement of the adversary proceeding was a final judgment and the instant claim objection could have been raised in the prior adversary proceeding. Thus, all elements for application of the doctrine of res judicata are present. The Trustee's claim objection is effectively an example of proscribed "claim splitting." Consequently, the Court disagrees with the Trustee that it made manifest errors of fact and law.

## V. CONCLUSION

For the foregoing reasons, the Court hereby denies both motions. Neither party has demonstrated any manifest errors of law or fact, or proffered any newly discov-

ered evidence not otherwise available prior hereto which would change any of the Court's findings.

This Opinion is to serve as findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

See written Order.

### ORDER

For reasons set forth in a Memorandum Opinion dated the 26th day of May, 1992, the Court hereby denies the motion of The Bank of Bellwood for alternative relief pursuant to 11 U.S.C. § 502(j) and Federal Rules of Bankruptcy Procedure 3003, 3008, 9006, 9023, and 9024. In addition, the Court hereby denies the motion of Thomas E. Raleigh, trustee of the Debtor's estate for limited reconsideration pursuant to Bankruptcy Rules 3008 and 9023 of the Court's Memorandum Opinion and Order dated February 28, 1992.